CLARENCE BURNETT et al., Respondents, v. ATCHISON, TOPEKA & SANTA FE RAIL-ROAD COMPANY, Appellant.

St. Louis Court of Appeals. Argued and Submitted January 7, 1913. Opinion Filed March 1, 1913.

1. **RAILROADS: Action for Death in Crossing Collision: Contributory Negligence: Failure to Look or Listen.** One who was familiar with the location of a railroad track and went upon the track in front of a train at a street crossing, without looking or listening, when, by looking, he could have seen the train in time to have remained off of the track, was guilty of contributory negligence as a matter of law, barring a recovery for his death, although the railroad company was guilty of negligence in operating the train at an excessive rate of speed, in failing to give warning signals of its approach, and in failing to provide a headlight on the engine.

2. ——: ——: **Last Chance Doctrine.** There is no room for the application of the humanitarian or last clear chance doctrine, where, between the time that the engineer could have seen one who ran in front of his train, by keeping a lookout, and the time he was on the track, there was no possibility of stopping the train.

Appeal from Scotland Circuit Court.—*Hon Charles D. Stewart,* Judge.

REVERSED.

*Thomas R. Morrow, James P. Gilmore, N. M. Pettingill* and *John H. Lathrop* for appellant.

Even though the defendant was negligent, the evidence shows such negligence on the part of deceased contributing directly to his death as to bar a recovery in the case and defendant's demurrer to the evidence should have been sustained. Laun v. Railroad, 217 Mo. 563; Burge v. Railroad, 148 S. W. 925; Newton v. Railroad, 152 Mo. App. 167; Higgins v. Railroad, 197 Mo. 300; Harlan v. Railroad, 64 Mo. 480; Butts v. Rail-

road, 98 Mo. 272; Green v. Railroad, 192 Mo. 131; Giardina v. Railroad, 185 Mo. 330; Schaub v. Railroad, 133 Mo. App. 444; Duncan v. Railroad, 46 Mo. App. 198; Lien v. Railroad, 79 Mo. App. 475; Jones v. Barnard, 63 Mo. App. 501; Drake v. Railroad, 51 Mo. App. 562; McGee v. Railroad, 214 Mo. 530; Caldwell v. Railroad, 58 Mo. App. 453; Yancey v. Railroad, 93 Mo. 433; Boyd v. Railroad, 105 Mo. 371; Moore v. Railroad, 176 Mo. 528; Kelly v. Railroad, 75 Mo. 138; Harlan v. Railroad, 65 Mo. 22; Reno v. Railroad, 180 Mo. 470; McCreery v. Railroad, 221 Mo. 18; Van Bach v. Railroad, 171 Mo. 338; Guyer v. Railroad, 174 Mo. 344; Watson v. Railroad, 133 Mo. 246; Schmidt v. Railroad, 191 Mo. 215; Boring v. Railroad, 194 Mo. 541; Markowitz v. Railroad, 186 Mo. 350; Peterson v. Railroad, 156 Mo. 552; Stotler v. Railroad, 204 Mo. 619; Hayden v. Railroad, 124 Mo. 566; Kelsay v. Railroad, 129 Mo. 362; Lane v. Railroad, 132 Mo. 4; Mockowik v. Railroad, 196 Mo. 550; Sanguinette v. Railroad, 196 Mo. 466; Moody v. Railroad, 68 Mo. 470; Payne v. Railroad, 136 Mo. 562; Hook v. Railroad, 162 Mo. 569; Walker v. Railroad, 193 Mo. 453; Zimmerman v. Railroad, 71 Mo. 476; Henze v. Railroad, 71 Mo. 636; Purl v. Railroad, 72 Mo. 168; Turner v. Railroad, 74 Mo. 602; Hixon v. Railroad, 80 Mo. 335; Fox v. Railroad, 85 Mo. 679; Huggart v. Railroad, 134 Mo. 673; Porter v. Railroad, 199 Mo. 82; Fletcher v. Railroad, 64 Mo. 484; Lenix v. Railroad, 76 Mo. 86; Stepp v. Railroad, 85 Mo. 229; Lennon v. Railroad, 198 Mo. 514; Petty v. Railroad, 179 Mo. 666; Matz v. Railroad, 217 Mo. 275.

*Hughes & McCord and E. R. McKee* for respondents.

(1) No person is assumed to be in fault until his fault appears, and in case of personal injury, its justice is reinforced by its accord with the natural instincts of self-preservation and fear of pain, maim-

ing and death. Railroad v. Langdrigan, 191 U. S. 461;
Railroad v. Aderhold, 58 Kan. 293; Norton v. N. C.
R., 122 N. C. 910; Grant v. Becker, 12 Ore. 329. To
hold otherwise would be to assume negligence on the
part of one in excuse of negligence on the part of the
other. Hanlon v. Railroad, 104 Mo. 381. So we say
it was for the jury under all the facts and circum-
stances in this case to determine whether or not
plaintiffs could recover and the court cannot as a mat-
ter of law say he cannot. Contributory negligence in
this State is an affirmative plea on the part of the de-
fendant, and when the negligent acts of the defendant
have been shown it is the province of the jury to de-
termine whether such presumption of negligence has
been overcome or not. Seska v. Railroad, 77 Iowa, 137.
(2) Where it appears that a person run down by rail-
road cars would by the exercise of due care, have
avoided such injury a presumption of contributory
negligence may ordinarily be presumed but where a
view along the track is obscured such presumption does
not arise. 8 Ency. of Evid. 897; Schum v. Railroad, 107
Pa. St. 8; Baker v. Railroad, 147 Mo. 140.

REYNOLDS, P. J.—Plaintiffs, as next of kin of
their brother, Elbert Burnett, bring this action against
the railroad company under the law of the State of
Kansas which provides, in substance, that when the
death of one is caused by the wrongful act or omission
of another, the next of kin, when no personal represen-
tatives had been appointed, the deceased having been
a resident of that State at the time, may maintain an
action for the death, if the one killed could have main-
tained an action had he lived against the company for
injury for the same act or omission. Such action must
be commenced within two years; the damage recovera-
ble not to exceed ten thousand dollars, and the recov-
ery must inure to the exclusive benefit of the widow
and children, if any, or next of kin, to be distributed

in the same manner as personal property of the deceased. [See Dassler's Compilation (1899) General Statutes Kansas, secs. 4686 and 4687.]

Burnett left no parents nor children, as is averred, nor was there any administration on his estate. Alleging that the killing of Elbert Burnett occurred through the wrongful act of defendant in running one of its trains through the city at a very high and unlawful rate of speed and without proper headlights and without ringing a bell or sounding a whistle, in violation of an ordinance of the city, and while the deceased was going along the sidewalk of a public street in the city that crossed defendant's track, defendant's train by which he was killed then going across that street at the unlawful and reckless rate of about sixty miles an hour, damages are demanded in the sum of two thousand dollars.

The cause was tried to a jury in the circuit court and a verdict returned in favor of plaintiffs in the sum of $2000, judgment following. Interposing a motion for a new trial as well as one in arrest and saving exceptions to the action of the court in overruling these, defendant has duly perfected its appeal to this court.

The contention of counsel for appellant is that on all the evidence in the case the court should have directed the jury that plaintiffs could not recover. If this contention is correct, there is no occasion to examine into the other points made by the learned counsel on either side.

According to evidence given on behalf of plaintiffs in this case, Elbert Burnett, himself a young man, with one or more other young men, were at the house of one Brunk, a friend, in Nickerson, Kansas, on Thanksgiving Day, 1908. Nickerson is a small city or town of ten or fifteen hundred inhabitants. Young Burnett was working at a farm outside of Nickerson but at the time was living with one Maize, whose house

was about a fourth of a mile from town. He and Maize went to the house of Brunk, on Main street, and the three. of them went from there and along that street, which crosses the railroad tracks, to a restaurant on Main street about one hundred and fifty feet north of the tracks of defendant, Brunk's house being a short distance south of those tracks. Intending to leave their homes and go to the farm or farms on which they were employed early the following morning, and wanting to buy tobacco, they went over to the restaurant that night to do so, knowing that and other stores would not be open early the next morning. They started from Brunk's house and reached this restaurant between seven and eight o'clock of Thanksgiving night. They all wanted to make the trip and get back to Brunk's house for a contemplated party to be held there that night as quickly as possible—"were in a hurry to get back," said witnesses. To reach the restaurant from Brunk's they went along Main street and crossed the railroad track at the place at which the accident afterwards happened. Reaching the restaurant, they bought their tobacco. Brunk left the restaurant first, Burnett and Maize stopping in it a moment or two longer to light their pipes. There was a small building on Main street immediately adjoining the restaurant on the south which covered about thirty feet front along Main street, and was the only building between the restaurant and the depot of defendant. The depot is about forty feet west of the sidewalk along Main street. A short distance, about eighty or ninety feet, south of the restaurant was a cross street and between that cross street and the depot was what is called "a house track" of the railroad company, on which several box cars were in place at the time. After one passed the house adjoining the restaurant one could see west up the track of the defendant company for several hundred yards unless standing so that these cars on the house track intervened, and until you reached the de-

pot. When you were directly to the east of that, of course the view toward the west was cut off. The house track was parallel with the depot and at a right angle to Main street. There was a tool house on the line of the railroad about four hundred yards west of the depot; also a small coal house some hundred and fifty feet west of the depot and along the railroad track. Brunk, walking along Main street after leaving the restaurant and passing the adjoining building, was overtaken by Burnett and Maize, who were either walking at a very rapid gait or running. The weight of defendant's testimony is that they were running, young Burnett outstripping Maize. As Brunk was walking along and had reached the south side of the cross street—about sixty feet from the depot—he saw a black body, "a dark body," which he took to be a train, coming rapidly along the railroad track from the west. He called out to the two young men to wait, to stop, and Maize stopped. They had passed Brunk just before he saw this black object, and it was then he called to them. Maize stopped about sixty-five or seventy-five feet from the main track. Burnett was then about twenty-five or thirty feet ahead of Maize and kept on until reaching and trying to cross the track, he was hit by the oncoming train; did not look back; did not stop; was not seen by any one to look to the west, from which direction the train was approaching. He either failed to hear Brunk or, hearing, did not heed him, but kept on. One reaching within eight feet of the track had a clear view west and along it for over a mile. Immediately upon reaching the railroad track and apparently having passed a little beyond the center of it, Burnett was struck by the train of defendant. This train was composed of an engine, a caboose and four or five freight cars and was moving at great speed, the witnesses varying as to that, some placing it at sixty miles an hour; indeed, only one witness placed its speed as low as thirty-five

miles an hour, all of the others, and there were several of them, testifying that its speed was from forty-five to sixty miles an hour. The engine had no headlight burning; no one heard a bell or whistle; the only lights about the engine were two white lights in front on either side of the headlight, it being in evidence that these are small signal lights indicating that the train was an extra one, and the evidence is uncontradicted that this was the fact. It is in evidence that under the ordinances of the town of Nickerson, the lawful rate of speed through the corporate limits of Nickerson was not to exceed six miles an hour. There was an automatic signal, either bell or light, at the crossing of Main street and the railroad track, but it was not in operation on the night of the accident and had been out of order for two or three days prior thereto. In addition to Brunk two or three other witnesses testified that from the various positions they occupied, they had seen this approaching train; some of them testified to having heard the whistle of a train when it was a mile away, but as the tracks of another railroad run parallel with those of defendant but about four blocks away, possibly something like three hundred yards south of them, at the distance from which the sound apparently came the witnesses were uncertain as to whether the whistle they heard or the rumble of the train, also heard by one or more, was made by a train on the line of defendant's road or on that of the other road. There was some evidence tending to show that Burnett and Maize were running a race. Other witnesses, however, for plaintiff said they were merely running together, although Burnett was some few feet, possibly twenty-five or thirty feet, in advance of Maize, when Maize stopped on the hail of Brunk, Maize then being near the north side of the depot building. The track was some eight feet south of the front of that building, there being a platform that wide between the depot building and the track. At all events the

testimony is all one way to the effect that when Brunk called out to the two young men Maize stopped at a point beyond danger and young Burnett kept on to his death. These in outline are the facts in the case, the testimony of the plaintiff's witnesses varying as to where the on-coming train could be seen from, as to their opportunity to see and hear it, and as to the fact of their seeing and hearing it. There is no dispute whatever over the fact, however, that young Burnett was either running or walking very rapidly and that without any halt whatever as he approached the track he attempted to cross it. It may be conceded in favor of plaintiffs that as a matter of fact he did not see nor hear the approaching train until too late to avoid it; in point of fact, the evidence tends very strongly to convey the impression, that, to use a common expression, the unfortunate young man "never knew what hit him." When the engine struck him he was carried something like a hundred or a hundred and fifty feet and when his friends, after procuring a lantern, went to find him, finding him some five minutes after his disappearance, he was lying south of the track, a leg and arm broken, and he dead.

On this state of facts, which we make briefly, but we think accurately, from a careful reading of the testimony in the case, we are bound to hold that the case should not have gone to the jury but that the demurrer to the evidence should have been sustained. That the defendant railroad company was grossly negligent in disregarding the speed ordinance of the town in running without a headlight, in providing no watchman or signal at this street crossing in the town, in running at an excessive rate of speed in that locality, even leaving out of consideration the town ordinance, is beyond question. But we cannot escape from the conviction, and are compelled to hold as a matter of law, that this unfortunate young man was guilty of such contributory negligence as barred a recovery by his

representatives. Cases of this kind have been before our court so frequently and are so fully collated by the learned counsel for the respective parties that it would be an idle consumption of time and an inexcusable consumption of space for us to attempt to enumerate all of them. Doubtless the briefs of counsel will appear in the report of the case, and in those briefs, so far as we have occasion to examine them, every authority having any possible bearing upon this case has been collated.

As covering the general proposition here involved, we refer to the decision by our own court in Dey v. United Railways Co., 140 Mo. App. 461, 120 S. W. 134. There Washington, etc., Ry. Co. v. Lacey, 94 Va. 460, 1. c. 475, is cited and quoted with approval as holding that, ''The mere fact of looking and listening is not always a performance of the duty incumbent upon the traveler, for he must also exercise care to make the act of looking and listening reasonably effective. He must not approach the track at such a rate of speed that when he reaches the point where he can see or hear the train itself it is too late to protect himself from injury. He must exercise ordinary care in attempting to cross, or in crossing the track, and care is never ordinary care unless it is proportionate to the known danger.''

This young man was familiar with the premises; he must have known as a man of intelligence, as he is shown to have been, that extra trains were a matter of almost daily occurrence, certainly were to be expected. He knew, because he had crossed it but a few moments before, that he was approaching a railroad track, an object, as has been said by our court and our Supreme Court in many cases, in itself a warning of danger. So far as the evidence of the witnesses for plaintiffs themselves shows, Burnett neither looked nor listened; nor did he stop when called to by his companion. We are not to be understood as holding

that it was his duty to stop when approaching the track before attempting to cross, and we are not holding that the evidence shows that he heard his companion call to him, but are merely referring to these facts as incidents connected with the transaction. In addition to what is said by our court in the Dey case, the facts in Laun v. St. Louis & San Francisco R. Co., 216 Mo. 563, 116 S. W. 553, are sufficiently analogous to those of the case at bar to make that decision controlling in this case. So too, it may be said of Burge v. Wabash Railroad Co., 244 Mo. 76, 148 S. W. 925. See also Newton v. Wabash Railroad Co., 152 Mo. App. 167, l. c. 172, 132 S. W. 1195.

There is no room here for the application of the humanitarian or last clear chance rule. Between the time when young Burnett cleared the depot and was on the track and that when by any lookout the engineer could have seen him, there was no possibility of stopping the on-coming engine.

Respondent argues that if the train had been going at not to exceed six miles an hour, the accident would not have occurred. Who can say that? Who can say what the situation would then have been?

On consideration of the facts in the case and the law applicable to it, as laid down in the cases we have cited, we can come to no conclusion other than that the judgment of the circuit court must be reversed. It is so ordered. *Nortoni* and *Allen, JJ.*, concur.