KLOCKENBRINK v. ST. LOUIS & MERAMEC RIVER RAILROAD COMPANY, Appellant.

Division Two, March 17, 1903.

1. Demurrer to Evidence: SUFFICIENCY: HOW DETERMINED. Where the defendant did not stand on his demurrer at the close of plaintiff's evidence, the question of whether or not the court erred in overruling the demurrer to the evidence must be answered in view of all the evidence, that which was offered by plaintiff as well as that offered by defendant.

2. ———: ———: NEGLIGENCE: WAGON ON TRACK. Granting that plaintiff was negligent in driving his wagon on the track of an electric railway, when there was danger, owing to the late hour of the night, and the darkness, that he might not be seen by the motorman in time to avoid the collision, still if there is substantial evidence from which the jury might find that the motorman either saw, or by the exercise of ordinary care could have seen, plaintiff's wagon on the track in

Klockenbrink v. St. L. & M. R. Ry. Co.

time to have avoided a collision, it is not error to refuse a per-
emptory instruction to find for defendant, but it is the province of the
jury in such case to weigh all the evidence.

3. **Wagon on Track: NEGLIGENCE OF BOTH PARTIES.** Where both par-
ties are negligent the defendant is liable for the consequent injury to
plaintiff if the negligence of defendant occurred after defendant knew,
or by the exercise of ordinary care might have known, of the danger
of the defendant.

4. ——: ——: RUNNING TRAINS IN POPULOUS CITIES. What would
be ordinary care in the running of an electric car in the country on
a fenced track which the public do not frequent, would be gross neg-
ligence in a populous city. Ordinary care is to be measured by the
circumstances, locality and dangers to be anticipated.

5. ——: ——: ——: NEGLIGENCE OF BOTH PARTIES. It is negli-
gence for a driver to travel at a late hour of night with the wheel of
his wagon inside the rails of a street railway; and it is equal negli-
gence for a motorman to run his car at the rate of fifteen miles an
hour at night on a public street of a populous town without his motor
and brakes being well in hand to prevent injury to those who might
be lawfully compelled to use the street at that time of night.

6. ——: ——: DIRECT CAUSE OF INJURY. Mere negligence with-
out resulting damage does not bar a recovery by plaintiff. It is only
when plaintiff's negligence directly contributes to his injury that it
precludes his recovery.

7. ——: ——: WHEN DEFENDANT IS LIABLE. When the defendant
railroad sees, or by the exercise of ordinary care can see, the peril of
a trespasser on the road, caused by his contributory negligence, in time
to avoid injuring him, then plaintiff can recover notwithstanding his
contributory negligence. In such case it cannot be said that plain-
tiff's contributory negligence directly contributed to his injury.

8. ——: ——: ——: RECKLESS SPEED. While it is true a street
car company has a superior right to its own tracks, it does not have
a license to run its cars at a reckless rate of speed along a public high-
way regardless of the danger of collision with other travelers thereon.

9. ——: ——: EVIDENCE AS TO SPEED OF CARS AND RINGING GONG:
ESTOPPEL. Plaintiff did not count on the excessive speed of the car
as negligence, nor on defendant's failure to ring its bell or gong, but
plaintiff introduced without objection evidence tending to show that
the bell was not sounded. *Held*, that the issue being whether or
not the defendant did all it could to avoid the injury after its motor-
man discovered, or ought to have discovered, the plaintiff on the track,
defendant was not entitled to an instruction declaring this evidence
immaterial.

Transferred from St. Louis Court of Appeals.

AFFIRMED.

*McKeighan, Barclay & Watts,* and *Robt. A. Holland, Jr.,* for appellant.

(1)    If plaintiff's negligence "directly contributed to produce the injury," he can not recover; and the trial court erred in declaring a different rule of law by the tenth instruction to the jury.   It is only where plaintiff's negligence is "previous" or "remote" or "secondary" that the principle illustrated by Davies v. Mann, 10 M. & W. 546, becomes applicable.   The law is positive, in Missouri and elsewhere, that where plaintiff's negligence directly contributes to his injury he can not recover.   7 Am. and Eng. Ency. Law (2 Ed.), 373; Moore v. Railroad, 126 Mo. 278; Adams v. Ferry Co., 27 Mo. 95; Karle v. Railroad, 55 Mo. 476; Brown v. Comrs., 9 New S. Wales (L. R.) 92; Devine v. Railroad, 88 N. Y. 256; Johnson v. Railroad, 54 N. Y. Supp. 452; O'Keefe v. Railroad, 54 N. Y. Supp. 1088.   (2) Plaintiff did not, in his petition, assert any negligence on defendant's part by reason of any omission to ring the bell of the car prior to the collision; hence, it was error to refuse defendant's eighth request for an instruction that such omission did not create any liability on the part of defendant.   Plaintiff should not be allowed to recover on a cause of action not stated in his petition.   Chitty v. Railroad, 49 S. W. 868; Waldheir v. Railroad, 71 Mo. 514; Barkley v. Railroad, 96 Mo. 381; Edens v. Railroad, 72 Mo. 212.   (3) The learned trial court erred in refusing defendant's third request for instruction.   There was no ordinance or law limiting the speed of the car at the place of this accident, and hence that request should have been given according to the views of all the judges in Sullivan v. Railroad, 117 Mo. 215.   (4) The learned circuit court erred in refusing defendant's tenth request for instruction that the speed of the car was not negligence prior to the time

when the motorman might have discovered the vehicle on the track by the use of ordinary care on his part. No such speed as was shown in this case is negligence in the absence of municipal or other valid limitation thereof. Maher v. Railroad, 64 Mo. 267; Powell v. Railroad, 75 Mo. 80; Young v. Railroad, 79 Mo. 336.

*R. P. Williams* for respondent.

(1) The contributory negligence of plaintiff becomes immaterial if defendant could have avoided doing plaintiff injury by the exercise of ordinary care. Cooney v. Railroad, 2 Mo. App. 646; Bunyon v. Railroad, 127 Mo. 12; Hanlan v. Railroad, 104 Mo. 389; Fiedler v. Railroad, 107 Mo. 645; Hicks v. Railroad, 124 Mo. 115. (2) Instructions 7 and 10 given by the court of its own motion, and instruction 3 given upon the motion or request of plaintiff, and instruction 9 given upon request of defendant, all taken together submitted every question to the jury which defendant was entitled to have submitted, including that of the contributory negligence of plaintiff. Rhine v. Railroad, 88 Mo. 396; Maher v. Railroad, 64 Mo. 267; Bergman v. Railroad, 88 Mo. 678; Kellny v. Railroad, 101 Mo. 67. (3) Whether or not the rate of speed at which a car is run is so excessive and reckless as to constitute negligence, is a question for the jury, to be determined by all the attendant facts and surrounding circumstances. Taylor v. Railroad, 83 Mo. 390; Stepp v. Railroad, 85 Mo. 234; Pryor v. Railroad, 69 Mo. 215; Duffy v. Railroad, 19 Mo. App. 388. Defendant was not entitled to an instruction singling out the fact of the non-liability of defendant for failure to ring the bell at and before the time of the accident. If they mean to say that instruction 8 should have been given because the ringing of the bell was not alleged as negligence in the petition, then the defendant could not avail itself of the variance —if it could possibly be called a variance—without complying with section 2096, Revised Statutes 1889.

GANTT, P. J.—Action for personal injuries. Suit commenced November 19, 1898. Amended petition filed March 15, 1899. The petition, as amended, states that defendant is a railroad corporation organized under the laws of this State and was on July 19, 1898, operating its railroad over and along the streets and highways of Webster Groves, a town in St. Louis county. That on that day plaintiff was driving a large stake wagon, to which was attached two horses, over and along a highway in St. Louis county, to-wit, Lockwood avenue, in said town of Webster Groves, going in an easterly direction; that one of defendant's servants in charge of one of its cars, moving along and upon its track in Lockwood avenue in the same direction in which plaintiff was traveling and at a high and unusual rate of speed, carelessly and negligently ran into and against plaintiff's wagon from the rear; that the said defendant by its said servant at the time saw said wagon which plaintiff was driving, or in the exercise of reasonable care might have seen said wagon and plaintiff, in time to stop the said car before striking or running into said wagon; that the wagon was broken, torn to pieces and one of the horses killed and the other permanently disabled, and plaintiff was thrown to the ground, his finger broken, his back sprained, and he was otherwise maimed, bruised and wounded in his body, and has suffered and will continue to suffer much pain in body and mind, and has been permanently injured and disabled, and has been compelled to spend large sums of money for medicine and medical treatment, etc., to his damage in the sum of $2,500, for which he prays judgment.

The answer is a general denial, and a plea of contributory negligence on the part of plaintiff in driving upon the defendant's track on a dark night when there was plenty of room on a well-improved street where he could have driven, and continued to drive on the tracks without looking or listening for an approaching car. The reply denied all new matter. There was a verdict and judgment for plaintiff for $1,500 from which defendant appeals.

Various errors are assigned which we will consider in their order. This appeal is in this court by reason of a division of opinion in the St. Louis Court of Appeals.

Did the circuit court err in overruling the demurrer to the evidence?

As the defendant did not stand on its demurrer at the close of plaintiff's evidence, this question must be answered in view of the whole evidence; that which was offered by defendant as well as plaintiff. [McPherson v. Railroad, 97 Mo. 253.]

The defendant by putting in its evidence after its request for such an instruction had been made and overruled, took the chances of curing any defect in the plaintiff's evidence, but did not wholly waive its right to have the ruling of the court reviewed, but this court will look to the whole evidence no matter by whom offered. This is the settled practice in this State. [Eswin v. Railroad, 96 Mo. 294; Jennings v. Railroad, 112 Mo. 268.]

The testimony established that plaintiff on July 19, 1898, was a teamster; that he drove two horses to a very large stake wagon, and on that day had taken a load of freight from St. Louis to Kirkwood in St. Louis county, and was returning to the city in the night; that his route required him to come through Webster Groves, and when he reached that town coming from the west, he entered upon Lockwood avenue, a street or highway on which defendant had its railroad tracks. From the top of the hill on which he came into Lockwood avenue, there was a decline for about 1,800 feet, and then another elevation was reached.

It was about midnight. Plaintiff drove safely down the first hill and had gone about two hundred feet up the second when one of defendants' electric cars struck his wagon from the rear, and killed one of his horses, crippled the other and threw plaintiff out of the wagon, severely injuring him. At the time the wagon was struck by defendant's car, one of the horses and the two left wheels were inside of the rails of defendant's track and

the other horse and the remainder of the wagon were outside and between the south rail and the curb line, which was about twelve feet distant. Between the south rail and the curb line, there were telephone poles at intervals of about 150 feet, so that plaintiff's wagon could not pass between the telephone poles and the south track without coming within the reach of a car, should one pass the wagon opposite the poles.

There was also evidence that a buggy in which there were three men was traveling along the avenue that night, and near this wagon. The plaintiff's witnesses all place this buggy some thirty to sixty feet in the rear of the wagon and following it. The defendant's witnesses testified that the buggy was in front of the wagon, some thirty-five to fifty feet ahead of the wagon, when the motorman first discovered it.

As usual there was considerable discrepancy as to the rate of speed at which the car was moving. It was variously estimated from 15 or 18 to 20 or 25 miles an hour.

The plaintiff neither observed nor heard the approach of the car.

The testimony of Rockwell, the electrician for the defendant, was that if there was a mist or rain on the headlight, the motorman ought to see an object on the track seventy-five feet ahead of him. If there was no mist or rain on the headlight, he ought to see 150 feet ahead of him.

Greenhurst, the motorman, says he could stop the car, moving as it was at the time, within one hundred feet, and Rockwell as an expert concurred in that statement.

Both Greenhurst and McManus, who stood in the front door of the car talking to Greenhurst, say they saw the buggy about thirty-five to forty feet ahead of the car when they first noticed it. Ralston who was riding in the buggy testified that when the car passed the buggy, the motorman had not applied his brake and his right hand was hanging at his side. He could not see the position of his left hand. John C. Berthold

was a passenger on that car at the time, and says he heard no bell; that the effort to stop the car was not made over two seconds before the collision occurred.

The evidence for the plaintiff tended to show the buggy was not on the track, but was driven along by the side of it, but the defendant's evidence tended to prove the buggy had been on the track and was driven off just before the collision, and that until that movement the wagon was obscured by the buggy.

The evidence also tended to show that when the car reached a point forty or fifty feet west of or in the rear of the buggy, not only the buggy was plainly visible, but the rays of the headlight would also reach far enough to disclose the wagon to an ordinarily observant man.    After striking the wagon the car ran on from seventy-five or one hundred and fifty feet beyond the point of collision.

From which it appears there was substantial evidence from which the jury might find that, granting that plaintiff was negligent in driving his wagon on the track of the railroad company when there was danger owing to the late hour of night, and the darkness, that he might not be seen by a motorman in time to avoid a collision, still the motorman in charge of defendant's car either saw, or by the exercise of ordinary care could have seen plaintiff's wagon on the track, and by the exercise of ordinary care could have avoided the injury to plaintiff, and his wagon and team, and this being true, there was no error in refusing the peremptory instruction to find for defendant.

It was the province of the jury to weigh all the evidence and it was their right to believe and find that the wagon of plaintiff was fifty feet ahead of the buggy which the testimony of plaintiff's witnesses showed was following the wagon from ten to thirty feet behind, and that the buggy was seen fifty feet ahead of the car, and there was ample evidence from which the jury could have found that it was not a misty night, and that the motorman could have seen by a proper and careful look an object as large as this wagon one hundred and fifty

feet ahead of him on his track, and there was evidence in the physical facts that the car not only knocked the heavy stake wagon off the track and wrecked it, but that it ran from one hundred to one hundred and fifty feet east after the collision, and so finding the jury were justified in drawing the inference and finding that the motorman failed to exercise ordinary care, and the means at his hand to stop his car after he became aware or by the exercise of ordinary care could have known of the danger in which plaintiff was placed by the approach of the car from the rear.

This is the settled law of this court. Thus in Scoville v. Railroad, 81 Mo. 434, it was ruled that to make defendant liable where both parties are negligent, the negligence of defendant must occur after the defendant knew or by the exercise of ordinary care might have known of the danger of the deceased.

In Hilz v. Railroad, 101 Mo. 36, it was said by this court, "If the failure to so discover him was the result of the omission of that measure of duty, which the law requires, in view of the locality, circumstances and dangers to be anticipated, and the due observance thereof would have enabled the persons in control of dangerous agencies of this sort to have avoided the injury by the use of reasonable care, then and in such case, such omission and want of reasonable care is, under the law, held the proximate cause of the injury, and liability for the resulting damage may then exist, *notwithstanding the negligence of the person injured.*" The same doctrine was re-asserted in Fiedler v. Railroad, 107 Mo. 645. In that case the plaintiff was admittedly a trespasser, by a positive statute, and yet we held that notwithstanding her contributory negligence the company was liable if its engineer discovered her peril in time to have avoided the injury by the exercise of ordinary care.

See also Bunyan v. Railroad, 127 Mo. 12.

And as said in the Hilz case, supra, ordinary care is to be measured "by the circumstances, locality and dangers to be anticipated." The jury in this case were authorized to believe that the motorman was rapidly

descending an incline on a public street in a populous village without having his hand on his lever.   While it may be conceded that the defendant has a superior right to its tracks, it must be remembered, its tracks are laid in a public highway where every citizen has a right to travel and it often occurs that these tracks are necessarily occupied by other vehicles, and what would be ordinary care in the country, on a fenced track which the public do not frequent, would be gross negligence in a populous city.  Its paramount right must be exercised in a reasonable and prudent manner.   [Moore v. Railroad, 126 Mo. loc. cit. 274.]

And while defendant argues that it was negligence for plaintiff at that hour of night to travel with his wheels inside of its rails, it is equally open to plaintiff to argue that it was reckless conduct on the part of the motorman to run his car at the rate of at least fifteen miles an hour on a public street at night without having his motor and brakes well in hand to prevent injury to those who might be lawfully compelled to use the street at that time.

Judge Bond, in his opinion in the St. Louis Court of Appeals in this case, quotes with approval a statement of the rule as laid down by Shearman & Redfield in their work on Negligence (5 Ed.), volume 1, sec. 99, as follows:  "But, furthermore, the plaintiff should recover, notwithstanding his own negligence exposed him to the risk of injury, if the injury of which he complains was more immediately caused by the omission of the defendant, after having such notice of the plaintiff's danger as would put  a prudent man upon his guard, to use ordinary care for the purpose of avoiding such injury.   It is not necessary that the defendant should actually know of the danger to which the plaintiff is exposed.   It is enough if, having sufficient notice to put a prudent man on the alert, he does not take such precaution as a prudent man would take under similar notice. This rule is almost universally accepted."

We have seen it is the settled doctrine of this court. [Dunkman v. Railroad, 95 Mo. 244; Kellny v. Railroad,

101 Mo. 67; Hanlon v. Railroad, 104 Mo. 389; Czezewaz-
ka v. Railroad, 121 Mo. 201; Morgan v. Railroad (60 S.
W. 195, 159 Mo. 262.]

And the same doctrine is announced by the Su-
preme Court of the United States.   [Inland & Seaboard
Co. v. Tolson, 139 U. S. 557; Railroad v. Ives, 144 U.
S. 408.]

Indeed the learned counsel for defendant do not
controvert this statement of the law, but complain bit-
terly that the court refused to submit to the jury
whether plaintiff's negligence did not *directly contrib-
ute* to his injury.

The defendant's answer specifically tendered this
issue.   It was submitted to the jury in the tenth instruc-
tion given by the court in the following terms:   "The
court instructs the jury that if you find from the evi-
dence that at the time the wagon was struck by the de-
fendant's car, the plaintiff was not exercising ordinary
or reasonable care, and that plaintiff's failure to exer-
cise such care *directly contributed* to produce the injury
of which plaintiff complains, then your verdict should
be for defendant, unless you further find from the evi-
dence that the motorman in charge of defendant's car
saw or by the exercise of ordinary care would have seen
that the wagon in which plaintiff was riding and driv-
ing was in danger of being struck by said car *in time* to
have prevented the accident complained of by the exer-
cise of ordinary care."

The court properly added the qualification upon
which plaintiff's case was predicated. It has been so re-
peatedly ruled that it is not error to refuse an instruc-
tion when the same has already been given that it is
deemed unnecessary to cite precedents to that effect.

This instruction is assailed because it is asserted
that if plaintiff's negligence directly contributed to his
injury he can not recover at all.   Clearly it is the law
of this State that mere negligence without any result-
ing damage does not bar a recovery by a plaintiff.   It
is only when the plaintiff's negligence directly contrib-

utes to his injury that it precludes his recovery. [Moore v. Railroad, 126 Mo. 265.]

The contention of defendant then in effect is, that if plaintiff is guilty of contributory negligence, he can never recover even though defendant recklessly and wantonly injured him after discovering his peril and when by the exercise of ordinary care it could have prevented harm to him. This is not the law of this State. When a defendant sees or by the exercise of ordinary care can see the peril of a plaintiff caused by the latter's contributory negligence, in time to avoid injuring him, then plaintiff can recover notwithstanding his contributory negligence. This is now the accepted and settled exception to the general rule that plaintiff's own contributory negligence bars a recovery. It was so expressly ruled in Kellny v. Railroad, 101 Mo. 67, and the doctrine of that case has been so recently reviewed and reaffirmed in Morgan v. Railroad, 159 Mo. 262, that it would be a waste of time to repeat what has been so pertinently said in those cases.

This case is much stronger than the Morgan case in that in this case the plaintiff was driving along a public highway on which he had a perfect right to drive by day or night, and in so doing was not guilty of any negligence. His driving along said track under the circumstances only took on the hue of negligence from the fact that defendant also had a right to run its cars on said street and that unless plaintiff should keep a watch out one of defendant's cars might be run against him. As said by Judge MARSHALL in Oates v. Railroad, 168 Mo. l. c. 544 et seq., "The sum of the adjudicated cases bearing upon the relative rights and duties of street cars and citizens traveling in vehicles drawn by horses or other animals is, that both have a right to use the street, but that neither has an *exclusive* right. . . . Because a street car carries more people than any other kind of a conveyance, or because it is authorized to run more rapidly than a vehicle can ordinarily be legally driven, or because the rush and restlessness of the age

make unreasonable demands for more and more rapid transit along the crowded thoroughfares of populous cities, it does not follow that a street car can be run in disregard of the rights of persons traveling by other means, nor that a street car company is exempt from the common-law duty of every one to exercise ordinary care, nor that it is only liable where its agents act wantonly, maliciously and heedlessly.''

While it was plaintiff's duty to pull out of the way of the defendant's car when it reached him, and while it was true the defendant had a superior right on its own tracks, it did not have a license to run its cars at a reckless rate of speed along a public highway regardless of the danger of collision with other travelers thereon.

It is true plaintiff did not count on the excessive speed of the car as negligence and hence it was not an issue in the case, but the court very properly refused to declare that there was no negligence on account of any rate of speed, and the same may be said as to the refusal to charge that defendant could not be held liable for a failure to ring its bell or gong that night. The plaintiff had not counted on such failure and whatever testimony went in on that point was admitted without objection and defendant got the full benefit of its own evidence on that point. Although not made the basis of a recovery by plaintiff, the ringing of a bell as testified to by defendant's witnesses or a failure to do so was material to the main issue whether defendant did all it could to avoid the injury after its motorman discovered or ought to have discovered the plaintiff on the track. It was not entitled to an instruction declaring this evidence immaterial after introducing it and after its failure to object to plaintiff's evidence that the gong was not sounded so as to apprise plaintiff of the approach of the car. We think the case was fairly tried, and the judgment was for the right party and it is accordingly affirmed. All concur.