MARY W. MAGINNIS, Appellant, v. MISSOURI
PACIFIC RAILWAY COMPANY, Respondent.

St. Louis Court of Appeals, April 7, 1914.

1. RAILROADS: Injury at Crossing: Failure to Give Statutory
Signals: Contributory Negligene: Proximate Cause.  In an
action for injuries sustained by being struck by a railroad
train at a crossing, prosecuted on the theory that defendant
was negligent in failing to ring the bell or sound the whistle
on the locomotive, as required by Sec. 3140, R. S. 1909, where
it appears affirmatively in plaintiff's case that his negligence
contributed to his injury, or that the failure to give the signal
did not occasion the injury, the prima-facie case is rebutted
and overcome, precluding a recovery by plaintiff.

2. ———: ———: ———: Alternative Duty.  Sec. 3140, R. S.
1909, requiring railroad companies to ring the bell or sound
the whistle on their locomotives for public road crossings, and
making them liable for all damages sustained by reason of the
failure to do so, does not enjoin the duty of both sounding the
bell and blowing the whistle, but it is sufficient if either be
done.

3. ———: ———: Contributory Negligence.  A man who was
alert and in possession of all his faculties and endowed with
good eyesight and hearing, walked onto a railroad track at a
public road crossing, and was struck and killed by a passenger
train which was traveling at from forty to forty-five miles per
hour.  For over thirty-seven feet before reaching the track,
his view was unobstructed, and he could have seen the train for
a distance of one-half a mile.  Held, that although the crossing
signals were not given, as required by Sec. 3140, R. S. 1909,
decedent was guilty of contributory negligence, barring a re-
covery for his death, since reasonable care required him to
look for an approaching train before going upon the track, and,
if he did so, he must have seen the approaching train and neg-
ligently attempted to cross the track in front of it.

4. ———: ———: ———.  Reasonable care requires one to
look and listen for an approaching train before going upon a
railroad track, because such tracks are an ever-present signal
of danger to all persons sui juris.

5. ———: ———: ———: Presumptions.  A person killed by
being struck by a railroad train is presumed to have looked
and listened before going upon the track, yet if his view was

open and unobstructed, so that if he looked he must have seen the approaching train, and he nevertheless went upon the track, he will be regarded as having seen it and negligently attempted to cross the track in front of it.

6. **NEGLIGENCE: Presumption.** The law indulges a presumption that a decedent exercised ordinary care for his own safety, in the absence of facts tending to show that he did not do so.

7. **———: Contributory Negligence: Last Chance Doctrine.** An injured person will be allowed a recovery notwithstanding his contributory negligence, if it appears that defendant, after notice of his peril, neglected to exercise ordinary care to avert injury to him.

8. **RAILROADS: Injury to Person on Track: Last Chance Doctrine.** Where a person is injured by being struck by a railroad train at a point where the railroad company is entitled to a clear track, and, therefore, a vigilant lookout is not required for persons, thereon, it is liable, under the last chance doctrine, only where its servants in charge of the locomotive are guilty of a breach of duty after they actually saw the peril of the injured person; but if the injury occur at a crossing, or other place where a license obtains and pedestrians are known to walk, and the operatives of the locomotive either saw, or by exercising ordinary care could have seen, the injured party on the track or about to enter thereon, unobservant of the danger, and thereafter could have averted injury to him, he is entitled to recover, and if, in such case, the slowing down of the train or the giving of danger signals would have enabled such party to have saved himself from injury, a recovery may be had, under the last chance doctrine, although the train could not have been fully stopped before the collision occurred.

9. **TRIAL PRACTICE: Demurrer to Evidence: Rules of Decision.** Although the evidence introduced by the plaintiff is insufficient to warrant a recovery by him, yet if the defendant introduces evidence, the question of whether the evidence is sufficient to warrant a recovery should be determined from a consideration of all the evidence introduced in the case.

10. **———: ———: ———.** In determining whether or not plaintiff has made a prima-facie case, all inferences of fact in favor of defendant should be rejected and all reasonable inferences allowed in favor of plaintiff.

11. **RAILROADS: Injury to Person at Crossing: Last Chance Doctrine: Danger Zone.** While a locomotive engineer is not required to anticipate that a pedestrian will go upon the track in front of the train, yet where he sees a pedestrian running toward the track, with his eyes turned to a different direction from that from which the train is approaching, it is for the

jury to determine the question as to when decedent entered "the danger zone," at which time the engineer, in the exercise of ordinary care, should have taken steps to prevent injury to him.

12. ————: ————: ————: **Question for Jury.** In an action for the death of a person by being struck at a crossing by a railroad train, evidence *held* to be sufficient to justify submission to the jury of the question of defendant's liability, under the last chance doctrine, notwithstanding decedent's contributory negligence, on the theory that defendant's engineer, after discovering the peril of decedent, could have prevented the collision by sounding the alarm and checking the speed of the train.

Appeal from St. Louis City Circuit Court.—*Hon. Hugo Muench*, Judge.

AFFIRMED AND REMANDED.

*Glendy B. Arnold* for appellant.

(1) (a) Inasmuch as the learned trial judge granted the defendant a new trial, among others, on the conflicting grounds that he should have sustained a demurrer to the evidence and that the verdict was against the weight of the evidence, this court will not consider the latter ground as sufficient to sustain the order granting a new trial. Crawford v. Stock Yards Company, 215 Mo. 394; Gibson v. Ducker and Sons, 170 Mo. App. 145; Richter v. Railways Company, 145 Mo. 1. (b) The third ground of the motion for new trial cannot be considered by this court in determining whether the motion was properly sustained. (c) Even though this court should sustain the order granting the new trial on the third ground assigned by the trial judge, still the appellant has the legal right to have the other questions raised by the appeal determined by this court. Foley v. Harrison, 33 Mo. 460. (2) The plaintiff made a prima-facie case for the jury by showing that defendant's engineer and fireman failed to blow the whistle or to ring the bell, as required by Sec. 3140, R. S. 1909. Weigman v. Railway

Company, 223 Mo. 699; Dudley v. Railroad, 167 Mo. App. 647. (3) There was no plea of contributory negligence in the case. The allegations in the answer that the injuries to and consequent death of plaintiff's husband were the result of his own negligence and want of care in voluntarily going upon a track of the defendant, immediately in front of a moving train, without looking or listening for the approach of said train, by reason of which he was struck by it, is not a plea of contributory negligence. Benjamin v. Railroad, 245 Mo. 612; Cain v. Wintersteen, 144 Mo. 1; Ramp v. Railway Company, 133 Mo. 700; Allen v. Transit Company, 183 Mo. 411; Kaminiski v. Iron Works, 167 Mo. 462. (4) (a) Unless the evidence of contributory negligence is so clear that there is no reasonable ground for two opinions about it, the court cannot pronounce the injured party's acts contributory negligence as a matter of law, but should submit the case to the jury to decide the points as a matter of fact. Allen v. Transit Co., 183 Mo. 411. (b) There being no plea of contributory negligence in the case, there was no error in giving the plaintiff's second instruction. (c) In the case at bar, if the deceased was guilty of any contributory negligence at all, that fact was a question for the jury. Upon this record, no court can say that all minds would agree that the deceased was guilty of contributory negligence or that but one conclusion could have been drawn from the facts in the case. Powers v. Transit Company, 202 Mo. 267. (d) Section 3140, R. S. 1909, makes it a crime for those in charge of a locomotive to fail to give the signals therein required. This being true, the deceased had the right to rely upon a warning signal from this fast flying train, and was not guilty of contributory negligence in assuming that the defendant would give such a signal of the train's approach. Powers v. Transit Co., 202 Mo. 267. (e) In the absence of proper warning signals of the approach of the

train, the engineer could not rely upon the deceased to stop before entering into the danger zone, for he has no right to indulge in such an assumption, except when he, himself, is exercising ordinary care. (f) The evidence in this case raises the inference that the train was some four or five hundred feet away when the deceased was about to enter into the danger zone. If he had continued straight across the track, instead of going diagonally, as the evidence shows he did, he might have escaped injury. In such circumstances, the question of his contributory negligence, if any, was for the jury. Powers v. Transit Co., 202 Mo. 267. (5) If the humanitarian doctrine was in the case, contributory negligence was no defense. Strauss v. Railroad Company, 166 Mo. App. 165; Borders v. Railway Company, 168 Mo. App. 172. (6) Appellant's fourth instruction on the measure of damages was a correct declaration of law. Harding v. Railroad, — Mo. —. (7) The testimony of plaintiff's witnesses, as well as that of defendant's conductor, brakeman, baggageman and porter, on the train, that they heard no crossing signals prior to the alarm whistle, just as the train was about to strike deceased, though negative in character, was competent evidence from which the jury could find that the crossing signals required by Section 3140 were not given. Buckry-Ellis v. Railroad, 158 Mo. App. 499, 505.

*James F. Green* for respondent.

(1) The action of the court sustaining defendant's motion for a new trial was justified upon either of the grounds assigned. Iba v. Railroad, 172 Mo. App. 141; Crawford v. Stock Yards, 215 Mo. 394; Sissel v. Railroad, 214 Mo. 526. (2) There was no testimony in the case justifying a finding for plaintiff, and therefore the court properly set aside the verdict. Kelsay v. Railroad, 129 Mo. 365; Dyrcz v. Railroad, 238 Mo.

33; Burnett v. Railroad, 172 Mo. App. 51; Dey v. Railroad, 140 Mo. App. 461; Burge v. Railroad, 244 Mo. 76; Newton v. Railroad, 152 Mo. App. 167; Laun v. Railroad, 216 Mo. 563; Stottler y. Railroad, 214 Mo. 619; Green v. Railroad, 192 Mo. 131; Sanguinette v. Railroad, 196 Mo. 466; Farris v. Railroad, 167 Mo. App. 392; Gumm v. Railroad, 141 Mo. App. 313. (3) The answer of defendant was a sufficient plea of contributory negligence on the part of plaintiff's husband. Sissel v. Railroad, 214 Mo. l. c. 526; Peterson v. Railroad, 211 Mo. 520.

STATEMENT.—This is a suit under the wrongful death statute for damages accrued to plaintiff, the widow of William T. Maginnis, on account of the alleged negligence of defendant in running upon and killing her husband at a public road crossing. The finding and judgment were for plaintiff, but the court set the verdict aside on defendant's motion, and it is from this order the appeal is prosecuted by plaintiff.

There are several specifications of negligence in the petition, and they will be more particularly adverted to hereafter. However, among the charges so laid against defendant is one to the effect that it breached its duty imposed by the statute in failing to sound the usual alarms on approaching a public road crossing. The evidence is principally directed to this matter, but a question is made, too, with respect to the ability of defendant's locomotive engineer to have saved plaintiff's husband from disaster by exercising a vigilant watch, sounding alarms, and slowing down the train but without stopping it. These several questions will be considered in their turn as they appear by reference to the pleadings and the evidence.

Plaintiff's husband was sixty-nine years old at the time he came to his death, was alert for a man of his years, and possessed all of his faculties to a good

degree, including his sight and hearing. He, together with his wife, plaintiff, resided at Glendale, a small station on defendant's railroad in St. Louis county, through which Berry road, a public highway, seems to be the principal thoroughfare. Plaintiff's husband came to his death about seven o'clock in the morning, Sunday, August 20, 1911, while he was crossing defendant's south, or eastbound, track at Berry road, through being run upon by defendant's eastbound passenger train, on its south track, which was proceeding at a rate of speed from forty to forty-five miles per hour.

We copy from the brief of plaintiff's counsel a clear and complete statement of the facts relevant to a general outline of the case as follows:

"Plaintiff and deceased had been married forty-three years. On the morning of the death of her husband, plaintiff left her home at Glendale and had gone to Kirkwood to attend church, and at the time plaintiff left her home for church, the deceased was dressing, but was not ready to go with her, and said that he would come on after a while. Her husband was on his way to join his wife at mass when he was struck and killed by the defendant's train at the Glendale crossing of the Berry road and the defendant's tracks.

"Glendale is a 'right smart' little settlement on the defendant's railroad in St. Louis county, between Kirkwood and Webster Groves. The tracks of the defendant, at the locus in quo, run east and west and cross, at Glendale station, what is known as the Berry road, a much traveled, unmacadamized public highway —a country road,—which runs north and south. The tracks and the road intersect each other at about right angles. The defendant's railroad is double-tracked through Glendale. Eastbound trains use the south, and westbound trains the north, track. These tracks were flanked on the south, about two blocks distant, by the tracks of the Frisco Railroad and on the north, several blocks distant, by the tracks of the United

Railways Company. There was a golf club adjacent to defendant's tracks at Glendale station and another golf club in the same vicinity and some distance north of the station. Oakland station was about a half mile west of Glendale and was the next station west of Glendale on the defendant's road. From a short distance, say sixty to eighty feet, west of the Berry road to Oakland station, defendant's tracks were laid on a straight line. About sixty to eighty feet west of the Berry road was the beginning of a heavy curve to the northeast in the defendant's tracks. Adjacent to the defendant's right-of-way and south of the tracks, some twenty or twenty-five feet distant, and abutting the west side of the Berry road, was the country store of John P. Evers.

(The scene of this accident and its immediate vicinity are accurately shown by the photographs introduced by the plaintiff and defendant, and the plat introduced by the defendant, which accompany this record.)

"Just back of Evers' store and close to the defendant's right-of-way was a sign board, twelve feet high and sixty-four feet long, facing the tracks. South of the store and sign board and setting back in the yard was Evers' cottage and some outbuildings. Beginning at a point about twenty-one feet from the south rail of the eastbound track and on the west side of Berry road, and running in front of Evers' store and extending in a southerly direction was a narrow board walk which was used by pedestrians traveling north and south on the Berry road. There was no board walk on the east side of the Berry road south of the defendant's tracks in this vicinity. North of the tracks the board walk was on the east side of the Berry road. On the east side of the Berry road, and built right up close to the eastbound track on the south side thereof, was a small station house of the defendant for the use of its passengers.

"As deceased approached the crossing from the south and was struck and killed while on the south or eastbound track, we shall not bother about the measurements on the north side of the tracks. The defend- ant offered A. S. Butterworth, one of its civil engi- neers, as a witness, who fully explains the plat we have referred to and gives the accurate relative locations of the tracks, Evers' store, station house, sidewalks and other objects at the crossing of defendant's tracks and the Berry road. The accuracy of the testimony of this witness, together with the plat offered by the defendant, were not disputed by the plaintiff at the trial and doubtless were accepted as true by the jury. The measurements we give here are taken from the testimony of the defendant's witness, Butterworth, ex- cept as otherwise expressly stated.

"Berry road, just south of the tracks is about forty feet wide and in front of Evers' store is about thirty-six feet wide. The width of defendant's right- of-way at Berry road is one hundred feet. From the south rail of the eastbound track to the south line of defendant's right-of-way it was thirty-six feet. Ev- ers' store faces east. It was fifty-seven feet, on a direct line, from the northeast corner of the store to the first rail of the eastbound track. From the northeast cor- ner of Evers' store to the northwest corner of the sta- tion house, the distance was eighty-five feet. On the ties between and outside the two rails of the eastbound track, the defendant had laid the heavy crossing boards shown in the photographs. The boards were sixteen feet long and were designed to even up the tracks for the use of vehicles. The east ends of the boards were eighteen feet west of the northwest corner of the little station house. In a direct line from the northeast corner of Evers' store, to the east end of these cross- ing boards it was seventy feet. The plaintiff's evi- dence shows that deceased was struck while on the east ends of the crossing boards and near or on the

north rail of the eastbound track. (Two steps more would have taken the deceased out of danger.) Defendant's engineer says that deceased was either on, or just east of, the east ends of the crossing board when he was struck by the engine,—he is not sure which.

"There was but one eye witness in this case who saw the deceased as he emerged from behind Evers' store and approached the track on the west sidewalk of the Berry road, and that was James E. Hays, defendant's engineer. None of the plaintiff's witnesses saw the deceased immediately before he was struck by the train, but there is other indisputable evidence in the record that deceased came up the west sidewalk of Berry road, entered the westbound track at the west end of the crossing boards and walked on these boards in a northeasterly direction to the east ends of the boards, a distance of about fifteen or sixteen feet, where he was hit, as he was about to step off of the track. He was pursuing the usual course of northbound pedestrians crossing the defendant's tracks. The road was muddy, deceased was on his way to mass, and was evidently making for the plank walk north of the tracks and on the east side of the Berry road.

"The evidence shows that a pedestrian approaching the crossing would not have a fair opportunity to see an approaching train from the west, on defendant's tracks, until he had passed north of Evers' store. There is no doubt about deceased's ability to have seen the train, or the engineer to see the deceased, after the latter passed north of the store.

"John P. Evers, the owner of the store, and formerly station agent of the defendant at Glendale, was a witness for plaintiff. He was in his yard at the time of the collision. His attention was first drawn to the train by the sudden alarm whistling of the engineer. He ran out in front of his store on to the Berry road and saw the train crossing the road, and ran up to the crossing and after the train had passed the cross-

ing, he saw the deceased lying on the westbound or north track, about ninety or a hundred feet from the ends of the crossing boards. It had rained the night before, and the crossing was soft on top and the road muddy. Mr. Evers examined the shoes of deceased after he was struck and found 'breaks' in the soles of them. He also examined the crossing boards and the surface of the walk, to see if they could determine where the deceased was when he was struck, and his course over the crossing. As the testimony of Evers on this point is of great 'pith and moment,' we shall quote it here in full:

## DIRECT EXAMINATION.

Q. Could you tell from your examination made there where he was on the eastbound track when he was struck by the train? A. The road through here that morning, it had been raining the night before, and that morning the road was soft on top and the tracks which we supposed to be Mr. Maginnis', from the break in his shoe, the last footprint that we could trace of him was on this plank.

Q. Which plank is that? A. That is the north plank on the eastbound track.

Q. The north plank between the eastbound tracks? A. Yes, sir.

Q. I mean between the rails of the eastbound tracks? A. Yes, sir.

Q. Now, in the tracings there of his footsteps, where did he step on to the eastbound track? A. It looked through here, there was other tracks, the only way we could trace it was from the break of the shoe, at this plank, this plank was even with the rail.

Q. Which end? A. The west end.

Q. You traced his footsteps at the west end of the plank? A. From the imprint in the mud there was on the crossing.

Q.   Where was the first one?   A.  The first one was in the cinders here right by the planking.

Q.   At the end of the board walk?   A.  No, at the end of the planking between the rails.

Q.   At the west end?  A.  Yes, sir.

Q.   In other words, you could trace where he had stepped on to the boards between the rails of the east-bound track at the west end?   A.  That was not as distinct, as the ones on here, because there was more mud on the plank than there was on the cinders.

Q.   You could discern from his footprints that he made there that he stepped on the planking at the west end?  A.  We could see the tracks there; yes, sir.

Q.   On the west end of the plank?  A.  Yes, sir; that was early in the morning and there was not many tracks there.

Q.   You could tell that his tracks ended on the north plank, about how far from the east end of the north plank?  A.  I don't remember now, it was just where the mud was least on the plank.

Q.   Could you tell about how far, in other words, how many feet had he walked on that plank there, in your judgment?  A.  As near as I can judge, had he taken this track through it was probably fifteen feet.

Q.   He had walked fifteen feet on the board between the rails of the east bound track?  A.  Yes, sir. By the Court:

Q.   Just the entire length of those boards?  A.  I should judge fourteen feet.

Q.   He walked almost to the end?  A.  He had to go diagonally.

Q.   But did you see mud almost to the end of the plank?  A.  Yes, sir; it was outside of the wagon tracks.

## CROSS-EXAMINATION.

Q. In noticing these footprints that were indicated there in the mud on the crossing planks, you found prints which indicated that Mr. Maginnis—calling your attention to Plaintiff's Exhibit D—you found indications that Mr. Maginnis had probably stepped on the edge of the crossing boards here and had continued diagonally across towards the north rail, did you? A. Yes, sir.

Q. And in covering that space diagonally across the crossing boards, how many footprints did you find there? A. I don't remember as to that, we were merely tracing to try to find out where he was when he was hit, this was after this had happened, and the only way we could trace it was by a break in the shoe, because there were other steps.

Q. Other footmarks on the crossing at that time? A. Yes, sir.

Q. Other people had come over there? A. Yes, sir.

Q. And had made tracks also? A. Yes, sir.

Q. And you found about how many footprints that in your judgment were those of Mr. Maginnis? A. We found at least half a dozen, that is, from the plank walk up.

Q. You found, you think, as many as a half a dozen footprints covering that space diagonally across the walk? A. Yes, sir.

By the Court:

Q. That would be only one shoe that had a break or was it both? A. That was the only way we could trace it.

Q. Did you find a break on one foot only or breaks on both feet? A. If I remember correctly, both shoes.

By Mr. Green:

Q. Breaks on both shoes? A. Yes, sir.

Q. When you say half a dozen, you mean three of each, do you? A. I say at least that number.

"From the end of the board walk in front of Evers' store to the west end of the crossing boards, the distance was about twenty-one feet, according to the evidence of Butterworth and the plat."

The facts thus stated are not controverted in any material respect and appear to be acceded to by both parties. However, such other facts in the record as we deem relevant will be pointed out in the opinion.

NORTONI, J. (after stating the facts).—The court recited, in the order granting a new trial, that it erred in submitting the case to the jury, in that it should have directed a verdict for defendant, and this, of course, involves the idea that there is no substantial evidence to support a recovery on any of the grounds stated in the petition. It is urged by plaintiff that she made a prima-facie case by showing the fact that her husband came to his death at a public road crossing and defendant omitted to sound the statutory signals, but we are not so persuaded, in view of the contributory negligence on the part of decedent revealed in her evidence. The statute (Sec. 3140, R. S. 1909) imposes the obligation on defendant to ring the bell attached to its locomotive at a distance of eighty rods from the crossing of a public road and keep the same ringing until it shall have crossed such road, or sound the steam whistle eighty rods from the crossing and continue sounding it at intervals until the locomotive shall have crossed the public road. The same section provides, too, that the railroad company shall be liable for all damages any person shall hereafter sustain at such crossing when such bell shall not be rung or such whistle sounded as required, "Provided, however, that nothing herein contained shall preclude the corporation sued from showing that the failure to ring such bell or sound such whistle was not the cause

of such injury." Formerly it was the rule of decision under this statute that a plaintiff made out a prima-facie case of negligence by showing that neither the bell was rung nor whistle sounded, as required, and the injury complained of, for it was said that if so much appeared the statute cast the burden upon the railroad company to exculpate itself from fault by showing that the failure to ring the bell or sound the whistle was not the cause of the injury. [Huckshold v. St. Louis, I. M. & S. Ry. Co., 90 Mo. 548, 2 S. W. 794.] In that view, it is said the statute supplied the causal connection. [See McGee v. Wabash R. Co., 214 Mo. 530, 540, 545, 114 S. W. 33.] But more recent decisions qualify the general rule thus stated, to the effect that, if it appears affirmatively in plaintiff's case the negligence of the injured party contributed to his hurt, or that if, from plaintiff's case, it is revealed the failure to ring the bell or sound the whistle did not occasion the injury, the prima-facie case, which might otherwise be sufficient, is thus rebutted and overcome, so as to remove the question entirely from the province of the jury. In such cases, it is said that, notwithstanding the statutory provision, the defendant is not required to introduce evidence exculpating itself from fault and the case should not be submitted to the jury at all. [See McGee v. Wabash R. Co., 214 Mo. 530, 114 S. W. 33; Green v. Mo. Pac. R. Co., 192 Mo. 131, 90 S. W. 805.]

Here, there is an abundance of evidence tending to prove that defendant omitted to sound the whistle on the locomotive, as required by the statute, and, likewise, omitted to keep the bell constantly ringing. Of course, it is not essential to sound both the bell and whistle, for the statute is in the alternative as to this, but the evidence is that neither was done.

But be this as it may, it appears conclusively in plaintiff's case that, but for his own negligence or inattention, plaintiff's husband would not have been upon the crossing immediately in front of the fast ap-

proaching train. Plaintiff's witnesses say, and it is
conceded too, that defendant's track to the westward
was straight and the view of an approaching train
open for the distance of a half mile. The hour was
about seven o'clock on Sunday morning and the day
a bright one in August. Plaintiff's husband was a
man in good health, possessing all of his faculties,
alert and with good eyesight and hearing. It is true
that no one of the witnesses on the part of plaintiff saw
decedent go upon the track, but the evidence is quite
convincing that he passed north along the sidewalk
on the west side of Berry road until he reached the
end of that walk, twenty-one feet south of the south
rail of the eastbound track, and then turned diagonally
to the northeast, with a view, no doubt, of passing to
the sidewalk on the east side of the road and north of
the track, for it appears there was no sidewalk on
the north side of the track on the west side of Berry
road, and there was one on the east. It is to be con-
ceded that the view of decedent was obscured by Ev-
ers' store and his cottage and the long signboard in
the rear for a time, but after conceding so much, it
appears beyond question that no obstruction whatever
of the view one-half mile to the westward obtained
for a distance of thirty-six feet south of defendant's
south track. Evers' store is said to be twenty feet
wide and forty-two feet in length, and it appears to
stand diagonally with reference to the railroad—that
is to say, while the front end of the store adjacent to
the sidewalk is about twenty-three feet south of the
line of defendant's right of way, the west end of the
store is but twenty inches south of the same line. The
distance between the south rail of defendant's south
bound track and the south line of the right of way is
thirty-six feet, and as plaintiff's husband walked north-
ward, after passing Evers' store, it is certain and fixed
beyond controversy that he had a clear view of the
track for all of such thirty-six feet, and, indeed, there

should be added to this twenty inches to compensate the distance which the west end of Evers' store stood south of the right of way. According to this, the view was unobstructed for one-half mile to the west, while the decedent passed, if he moved straight forward, thirty-seven feet and eight inches. But it appears he followed the sidewalk to the end of it, twenty-one feet south of the south rail, and then turned to the northeast, entered upon the crossing boards on the track at the west end, and walked diagonally to the northeast corner of the crossing, where he was struck. This being true, he necessarily passed more than thirty-seven feet and eight inches before coming to the south rail of defendant's track at the crossing, for, by turning to the northeast, the route was elongated some. While the train which ran upon decedent came from the west at from forty to forty-five miles per hour, the plaintiff's witnesses all say he could have seen it clearly for half a mile, because the track was perfectly straight and no obstruction obtained at the place above pointed out. It is entirely clear that plaintiff's husband was negligent and inattentive for his own safety while passing through all of this unobstructed space before going upon the track, without looking and listening for an approaching train, and this is true though no signals were sounded, for the law imposed upon him the duty to be reasonably careful for his own safety notwithstanding. Reasonable care in the circumstances stated requires that one shall look and listen for an approaching train before going upon the tracks because railroad tracks are an ever present signal of danger to all persons *sui juris*. [Kelsay v. Mo. Pac. R. Co., 129 Mo. 362, 30 S. W. 339.]

But it is said, in the absence of evidence to the contrary, decedent must be presumed to have looked and listened for an approaching train, because the law always indulges the presumption that one exercised ordinary care for his own safety if nothing more ap-

pears.  It is true this presumption obtains, but when the view is open and clear, as here, and to look is to see and one nevertheless goes upon the track before the approaching train, he must be regarded as having seen it upon looking and negligently attempted to pass the crossing when he was run upon.  [Kelsay v. Mo. Pac. R. Co., 129 Mo. 362, 30 S. W. 339; Dyrcz v. Mo. Pac. R. Co., 238 Mo. 33, 141 S. W. 861.]  In this respect the instant case is in no wise similar to that of Weigman v. St. Louis, I. M. & S. R. Co., 223 Mo. 699, 717, 123 S. W. 38, for there the view was obstructed to within eight feet of the track on which the moving cars were operated, and it was declared the presumption that decedent looked and listened before passing the obstruction was sufficient to repel the imputation of contributory negligence in driving his team upon the crossing after passing such obstruction.  Here, plaintiff's husband was not seated in a wagon, some distance beyond the horse's head, but, instead, he was walking or running toward the tracks and the vision of the approaching train was unobstructed while he passed for more than thirty-six feet, in any view of the case.

But it is said decedent may not be declared negligent, for the reason that there is no evidence tending to prove where the train was at the time he went upon the track.  It is true nothing appears to that effect. But be this as it may, if plaintiff's husband either walked, as men usually do, or ran, as the engineer says he did, it is clear the train was within his view, if he had looked for it, all of the time after passing some twenty-two feet north of Evers' store and more than thirty-six feet south of the track.  On the other hand, if plaintiff's husband went upon the track before the train came into view half a mile to the westward and stood there without looking or listening until its approach, he was equally negligent in so doing.  It is, therefore, certain that, in any view of the case, and

this, too, on plaintiff's evidence alone, decedent must be declared negligent as a matter of law.

But though such be true, no one can doubt the rule that, although one is negligent for his own safety, a recovery may be allowed under the last chance doctrine; if it appears he came to his injury through the negligence of another which more immediately occasioned his hurt—that is, if it appears such other person, after notice of his peril, neglected to exercise ordinary care to avert injuring him. The principle is, that the party who has the last opportunity of avoiding an injury is not excused by the prior neglect of the injured party. Therefore, the negligence of the party inflicting the injury and not that of the one first at fault is regarded in the law as the sole or proximate cause of the injury. In such cases, it is said the negligence of the defendant supersedes that of the plaintiff and becomes the proximate cause of, while that of plaintiff is to be treated as remote to, the injury. [See Klockenbrink v. St. Louis, etc. R. Co., 81 Mo. App. 351; s. c. 172 Mo. 678, 72 S. W. 900; Shearman & Redfield, Negligence (6 Ed.), Sec. 99.]

In some cases, where it appears one is upon the track and wholly oblivious to danger, as if asleep or unconscious, the courts seem to authorize a recovery for his injury under the last chance doctrine only where it appears the train could have been stopped and the injury thus averted. Such seems to be the rule, and we believe a proper one, on the facts of White v. Mo. Pac. R. Co., 159 Mo. App. 508, 141 S. W. 436. See, also, the case of Markowitz v. Met. St. R. Co., 186 Mo. 350, 359, 85 S. W. 351, where it is said it requires more than the showing of a mere possibility that the accident might have been avoided in order to bring a case within the humanitarian doctrine. [See, also, Burnett v. A. T. & S. F. R. Co., 172 Mo. App. 51, 154 S. W. 1135.] But there are other cases which authorize a recovery under the doctrine adverted to, even though

it does not appear the train could have been actually stopped before running upon the injured party. In such cases, for instance, where one is awake and conscious, as if walking or working upon the track, it appears to be sufficient, conceding the injured party to have been negligent, if it is made satisfactorily to appear that defendant, after seeing the peril of one so situate, could avert injuring him by slowing down the train or checking its speed in conjunction with the warning involved in the danger signal and thus enable him to save himself as by getting off of the track and out of danger. Of course, in this view, if it be that the collision occurs at a point where the railroad is entitled to a clear track and therefore a vigilant lookout is not required for persons thereon, liability attaches only in respect of a breach of duty after the engineer or those in charge of the locomotive actually saw the peril of the injured person. [Young v. St. Louis, I. M. & S. R. Co., 227 Mo. 307, 127 S. W. 19.] But if the injury occur at a public road crossing or at a place on the track where a license obtains and pedestrians are known to walk, the element of notice intervenes and requires that those operating the train should anticipate and look out for the presence of persons there. In such cases, the rule of decision is established to the effect that if those in charge of the locomotive either see, or by exercising ordinary care to that end, could have seen, a party in peril on the track or crossing, or about to enter thereon, unobservant of the danger, and thereafter could avert injuring him, or by slowing down the train and checking its speed, together with the employment of danger signals, enable the party on the track to save himself from hurt, the obligation obtains to do so. On a breach of this obligation and for a failure in respect of it, a recovery may be had by the injured party, and this, too, though the space be insufficient in which to actually stop the train before a collision occur, for it will suf-

fice if the injury could have been averted by the exercise of ordinary care, though a full stop could not be had in the intervening space. [Reyburn v. Mo. Pac. R. Co., 187 Mo. 565, 86 S. W. 174; Moore v. St. Louis Transit Co., 194 Mo. 1, 92 S. W. 390; Murray v. St. Louis Transit Co., 108 Mo. App. 501, 83 S. W. 995; Klockenbrink v. St. Louis, etc. R. Co., 172 Mo. 678, 72 S. W. 900.]

It is insisted that, though plaintiff's husband was negligent at the time, she is, nevertheless, entitled to recover, for that it appears defendant might have averted the collision if its engineer had kept a vigilant watch, as was his duty, upon approaching the crossing of a public road, and checked the speed of the train upon seeing him approaching the track as if to cross it and within the danger zone. It is certain that the evidence introduced on the part of plaintiff alone is insufficient to authorize a recovery in this view; but though such be true, as to this matter, it is, in the present state of the case, competent to look at all of the testimony adduced on either side and consider the argument with reference thereto. [See Klockenbrink v. St. Louis, etc. R. Co., 172 Mo. 678, 72 S. W. 900.]

Besides laying a charge of negligence with respect to defendant's omission to sound the signals, required by the statute, at a public road crossing, the petition avers, too, that defendant breached its duty in that those in charge of the locomotive failed to keep a vigilant lookout for persons in the highway and neglected to slacken or slow down the speed of the train after they either saw, or might have seen, plaintiff's husband approaching the crossing with a view to passing over it. It is also averred in this connection, that defendant was negligent in not sounding alarm whistles after discovering the perilous situation of plaintiff's husband and thus apprising him of the approach of the train. According to the evidence for plaintiff,

her husband passed northward along the board walk on the west side of Berry road to the end of the walk, twenty-one feet south of the south rail, and then turned to the northeast and entered upon the track at about the southwest corner of the road crossing, as constructed with plank, and walked thence the full length of the crossing, sixteen feet, to the northeast corner thereof, where he was struck by the locomotive. This course is given in evidence by means of identifying decedent's tracks because of a "break" in the sole of his shoe. If this route were followed, then plaintiff's husband walked about sixty feet directly toward the tracks and the crossing under the eye of the engineer. The engineer, Hays, says he saw plaintiff's husband immediately when he emerged from behind Evers' store and that he was running toward the crossing but in the roadway rather than upon the sidewalk. Of course, the engineer could not see the decedent immediately on his passing the northeast corner of Evers' store because of the fact that the store stood diagonally as to the tracks and the northwest corner of it was within twenty inches of the railroad right of way. But from the testimony of the engineer, it may be safely said that he saw Maginnis when he was within ten or fifteen feet north of the northeast corner of the store building. The engineer said he thought decedent was going to the little station immediately south of the track but on the opposite side of Berry road. It is conceded, for all of the evidence reveals it to be true, that decedent was struck by the locomotive while at the end of the crossing boards and at the northeast corner of the crossing as constructed. One more step, or two, at most, would have placed him beyond all danger, for after coming upon the track, he had walked to the northeast the full length of the crossing and to its northeast corner, about sixteen feet. During all of the time, the decedent was in view of the engineer. According to the engineer's testimony, he was running

toward the track. The engineer gives it as his judgment that he saw him so running forty-five or forty-six feet from the point where he was killed. The engineer also says that the locomotive was within forty feet of the road crossing when he sounded two blasts of the whistle or the danger alarm, to the end of notifying Maginnis of the approaching train and the danger. It therefore appears that the engineer admits plaintiff's husband ran forty-five or forty-six feet toward the place where he was killed, under his immediate eye, and other portions of the testimony of the same witness tend to prove that he ran sixty feet while the train approached and was all of the time in the view of the engineer, who says he first discovered Maginnis when he emerged from behind the line of Evers' store. It is obvious that the locomotive at that time must have been several hundred feet west of the crossing, for it was approaching at from forty to forty-five miles per hour, that is, sixty-six feet per second, and overtook plaintiff's husband at the end of his sixty-foot run, immediately before he stepped off the track on the northeast corner of the crossing. The engineer says he could have stopped the train within 600 feet at the rate it was traveling and that the speed could have been reduced to twenty miles an hour within 300 feet. It is to be inferred that had the speed been reduced but slightly, plaintiff's husband would have escaped without harm, for the collision occurred when he was in his last effort to get off of the track on the north side. [Schmidt v. St. Louis Transit Co., 140 Mo. App. 182, 120 S. W. 96.] The engineer says, too, that though plaintiff's husband was running toward the track all the time under his eye, he sounded no alarm whistle until within about forty feet of the crossing, which would be but a second before the catastrophe.

On this question, as to whether or not the issue should have been submitted to the jury, we are required

to reject all inferences of fact in favor of the defendant and at the same time allow all such inferences as are reasonable in favor of the plaintiff, for the jury alone may reckon with them. [Buesching v. Gaslight Co., 73 Mo. 219.] In view of this evidence, we believe the question as to whether or not defendant could have prevented the injury and death of plaintiff's husband, in the circumstances so stated, notwithstanding his negligence, by sounding an alarm and checking the speed of the train before reaching within forty feet of the crossing is for the jury to answer. It is true it may be that the engineer was not required to anticipate plaintiff's husband would go upon the track in front of the train, but he says Maginnis was running in that direction with his eyes turned to the northeast, whereas the train was coming from the west. In such circumstances, it is for the jury to answer with respect to the area of the danger zone and to determine what the precepts of ordinary care may be as to obviating an injury to another. [Moore v. St. Louis Transit Co., 194 Mo. 1, 92 S. W. 390.] The admission that nothing was done toward checking the speed of the train or sounding the danger signal until the locomotive came within forty feet of the crossing points with great force to an omission of due care on the part of defendant.

But though such be true, the court very properly set the verdict aside, for the reason the instructions given at the instance of plaintiff inhere with error throughout. Both the first and second instructions authorize a recovery for plaintiff on a finding of negligence against defendant for an omission to sound the statutory crossing signals, and this, too, though plaintiff's husband was negligent for his own safety at the time. This was error under the rule of decision above pointed out, and this is true even though contributory negligence was not pleaded in the answer, and we think it is, for that sufficiently appears in

plaintiff's case. If a recovery is to be had at all, it may be sustained only on the last chance doctrine, for the fault of the engineer in omitting to exercise ordinary care toward averting the injury after he either saw or might have seen the decedent about to become in peril—that is, coming toward the track in such a manner as to suggest the danger of a collision and to call for precautionary measures on his part.

The order granting a new trial should be affirmed and the cause remanded for further proceedings in accordance with the views above expressed. It is so ordered. *Reynolds, P. J.,* and *Allen, J.,* concur.