BY THE

ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# Courts of Appeals

AT THE

MARCH TERM, 1924.

---

R. E. WHIFFEN, Respondent, v. MISSOURI PACIFIC RAILROAD COMPANY, a Corporation, Appellant.

In the Springfield Court of Appeals, April 9, 1924.

1. **APPELLATE PRACTICE:** In Reviewing Overruled Demurrer to Evidence as Showing Contributory Negligence, Only Facts Most Favorable to Plaintiff's Recovery Stated. In reviewing an overruled demurrer to evidence as showing contributory negligence as matter of law, appellate court is required to state only facts which are most favorable to plaintiff's right to recover.

2. **RAILROADS:** Contributory Negligence Held for Jury. In action for personal injury and damage to truck in crossing collision the trial court properly overruled defendant's demurrer to the evidence and submitted the question of plaintiff's contributory negligence to the jury.

3. ——: Last Clear Chance Doctrine Held Inapplicable. Where it appeared by the evidence that physical surroundings were such that engineer could not have seen truck until he reached a point sixty or seventy feet from crossing, *held,* that it was error to submit to jury question of negligence predicated on last clear chance doctrine.

(224)

4. **NEGLIGENCE: Last Clear Chance Doctrine Stated** Means must be at hand to avoid injury after the person in peril is seen or could have been seen by exercise of ordinary care by those in charge of the instrumentality which does the damage.

5. **APPELLATE PRACTICE: Error in Submitting Negligence under Last Clear Chance Doctrine Held Harmless.** Where jury found for plaintiff in a collision case because of failure to observe speed ordinance and to give statutory signals at crossing, error in submitting liability on last clear chance doctrine was harmless.

Appeal from the Circuit Court of Butler County.—*Hon. Almon Ing,* Judge.

AFFIRMED.

*James F. Green* and *J. C. Sheppard* for appellant.

(1) The court erred in refusing to give to the jury appellant's instruction in the nature of a demurrer to the evidence at the close of respondent's evidence for the reason that it clearly appears that respondent and his driver were guilty of such negligence as precludes a recovery as a matter of law. Kelsay v. Mo. Pac. Ry. Co., 129 Mo. 362; Hayden v. Ry. Co., 124 Mo. 566; Evans v. Ry. Co., 289 Mo. 492, 233 S. W. 397; State ex rel. Hines v. Bland, 237 S. W. 1018; Landrum v. Ry. Co., 178 S. W. 273; Tannehill v. Ry., 279 Mo. 158, 213 S. W. 818. (2) The court erred in giving respondent's instruction No. 2, for the following reasons: (a) Said instruction allowed respondent to recover on the last clear chance doctrine, while there is no case made by the evidence on this theory. Alexander v. Ry. Co., 233 S. W. 44, and cases cited. (b) Said instruction permits the jury to find for respondent "provided you find that the plaintiff and his driver in charge of the truck, in approaching and attempting to cross the track, was oblivious of danger" regardless of the fact that the engineer did not know of the obliviousness. Coby v. Rail-

216 M. A.—15

way, 174 Mo. App. 648. (3) Excessive speed of a train in violation of city ordinance does not absolve the traveler from the duty of exercising care before crossing the track, and where he could have seen the train in time if he had looked and listened, but failed to do so, his own negligence was the proximate cause of his injury. Holtcamp v. Railroad Co., 234 S. W. 1054, 208 Mo. App. 316; Alexander v. Ry. Co., supra. (4) There is no evidence that respondent relied upon the fact that the engineer would obey speed ordinance, or that he knew of it. Mokowik v. Railroad, 196 Mo. 550. (5) If instruction No. 3-a is the law of this case, then instruction No. 2 is not, and is in conflict therewith, for the reason that No. 2 submits the last chance doctrine, and No. 3-a does not.

*Welker & Mulloy* for respondent.

(1) (a) Demurrer to the evidence admits the truthfulness of every fact which the evidence tends to prove, as well as every reasonable inference deducible therefrom. Davis v. Greenwell, 212 S. W. 22; Murrell v. Railway Co., 279 Mo. 92, 213 S. W. 694; Rosendale v. Ry. Co., 213 S. W. 169; Lavine v. United Rys. Co., 217 S. W. 574; Ulrich v. Ry. Co., 252 S. W. 377. (b) It has been repeatedly held that, where a demurrer to plaintiff's evidence is overruled, the defendant, by offering its own evidence, instead of standing on its demurrer, waives its right to object to the ruling of the court, supra, as it then becomes the duty of the jury to consider all the testimony in passing upon the case. Kaemerer v. Wells, 252 S. W. 730, l. c. 732, and cases cited. (c) On demurrer to evidence at close of entire case, plaintiff's evidence must not only be taken as true, but defendant's contradictory evidence must be taken as untrue. Conley v. LaFayette Motor Co., 221 S. W. 165. (d) On demurred to the evidence at the close of the entire case, the court must take the plaintiff's evidence as true, and draw every reasonable inference in his favor, and al-

so take into account evidence of defendant favorable to plaintiff. Lynch v. Gas Light Co., 233 S. W. 111. (e) It will be presumed that he knew of the existence of an ordinance limiting the speed of trains and that he relied on defendant running its trains at a rate of speed not in excess of that limited. The same presumption applies to Revised Statutes 1919, section 9943, requiring defendant to give signal. (f) Where plaintiff shows the statutory signals as required by sec. 9943, Revised Statutes 1919, were not given, and the fact of injury, the burden then rests upon the defendant to show that plaintiff was guilty of contributory negligence or that its failure to give such signals was not the proximate cause of the injury. Schultz v. R. R. Co., 223 S. W. 757; Monroe v. R. R. Co., 219 S. W. 68; McGee v. Ry. Co., 214 Mo. 530, l. c. 544, 144 S. W. 33; McNulty v. Ry. Co., 203 Mo. 475, l. c. 544, 101 S. W. 1082; Morrow v. Hines, 233 S. W. 493. (g) A general demurrer to the evidence is properly overruled if there is sufficient evidence to go to the jury upon any assignment of negligence alleged. Conely v. Railroad Co., 253 S. W. 424; Torrance v. Pryor, 210 S. W. 430. (2) (a) Where the petition contained allegations of negligence under the humanitarian rule together with other specifications of negligence, the plaintiff was not restricted to a recovery under the humanitarian rule alone. Israel v. Wabash R. Co., 239 S. W. 80, l. c. 83. (b) Where the instruction given at the request of defendant distinctly put before the jury the issue that defendant relied upon as a defense, defendant cannot complain that the jury was not properly instructed as to the real issue in the case. King v. Metropolitan Ins. Co., 211 S. W. 721. (3) (a) Plaintiff's testimony alone that he was unaware of the approach of the train, is sufficient to take the case to the jury on the question of whether he was oblivious to peril. Koontz v. Wabash Ry. Co., 253 S. W. 413. (b) Under the humanitarian doctrine there is no requirement that the jury find that the engineer, or those in charge of the train, observed plaintiff's obliviousness to danger; it is only necessary

that the jury find from the evidence that the engineer, or those running the train, saw, or by the exercise of ordinary care could have seen plaintiff in such position. Ganz v. Rys. Co., 220 S. W. 490-497; Koontz v. Wabash Ry. Co., supra; Wolf v. Wabash Ry. Co., 251 S. W. 441-446. (c) Obliviousness to peril, as contemplated within the humanitarian doctrine, is defined to be the position of one who has not knowingly placed himself in a position of danger. Karte v. Mfg. Co., 247 S. W. 417, l. c. 423; Kinlen v. Ry., 216 Mo. 145, 115 S. W. 523. (d) It is not necessary to allege that plaintiff was oblivious to the danger. The law presumes that he did not knowingly place himself in danger, and the burden of showing that he had knowingly placed himself in danger rests upon defendant. Karte v. Mfg. Co., supra; Koontz v. Wabash Ry. Co., supra.

FARRINGTON, J.—Plaintiff recovered judgment in the trial court for personal injuries and damage to a motor truck in which he was riding. A collision between the motor truck and one of defendant's trains occurred at a street crossing in Poplar Bluff. The motor truck was traveling east on Vine street, and the intersection of Vine street and defendant's railroad tracks is at the bottom of a sharp incline or hill, but after crossing the railroad tracks, which run practically north and south, Vine street continues on across a bridge over Black River. In going east down this hill the street is in a cut which the evidence shows obstructs a view of the railroad tracks to the north until a point is reached somewhere between fifteen and twenty-five feet of defendant's west railroad track, there being more than one track at this crossing. The train that struck plaintiff's truck was coming from the north, which, under all of the evidence, could not have been seen by the plaintiff or the driver of his motor truck until the truck had reached a point twenty-five feet from the tracks, and then at that point a view of the tracks to the north was something like ninety to

one hundred feet, the hill on the north side of Vine street obstructing the view.

The petition contains a number of charges of negligence but was submitted in instructions on but three. The answer was a general denial and an affirmative plea of contributory negligence.

The assignments of error can be covered by a discussion of the right of plaintiff to recover at all, appellant contending that under the evidence he was guilty of contributory negligence in law; and second, that he could not recover under the humanitarian rule.

Plaintiff's first instruction required the jury to find that the signals of warning were not given by defendant, or that the train was operated at a speed in excess of that provided for in city ordinances. The second instruction submitted the question on the humanitarian doctrine.

In order to dispose of the question of plaintiff's contributory negligence, as a matter of law, it will be necessary to state the facts of the case, and in doing this it is our duty to state only the facts which are most favorable to plaintiff's right to recover. No contention is made that there is not substantial evidence to the effect that defendant was guilty of failing to give warning signals as this train approached the crossing at Vine street, or that it was running at a speed in excess of that fixed by a city ordinance. The evidence shows that plaintiff, who did not live in Poplar Bluff but lived in Butler County, was familiar with this crossing, had purchased a second-hand motor truck and had procured a young man by the name of Robertson to drive it out of town for him. The truck was a second-hand Ford truck, and the driver, Robertson, was sitting on the left hand front seat operating the truck. The plaintiff was seated on the right, and standing in the rear was a young man who was going along with them. The evidence for plaintiff tends to show that as this truck started down the hill east on Vine street, at the bottom of which hill are defendant's tracks, they were running from six to eight

miles an hour; that they listened and heard no signals given by an approaching train, and that they were on the lookout for trains as they knew they passed there frequently. It is also shown that standing in the center of the street, according to defendant's testimony, twenty-five feet west of its west rail, and according to plaintiff's testimony from fifteen to twenty feet from the west rail, was a signal post, the defendant having installed a cross-signal for this crossing consisting of an electric bell or gong and a swinging signal, designated by some of the witnesses as a wig-wag or disc. That as they approached this street crossing they were listening for trains and for the electric signal, and that the bell or gong was not ringing nor was the wig-wag moving, both of which it was supposed to do as a train approached the crossing. Plaintiff's evidence tends to show that as they passed the signal post, which under the evidence was not over twenty-five feet from the railroad west rail, and under plaintiff's testimony not under fifteen feet from it, all three in the truck looked to the north and testified that no train was in sight; that they then looked to the south, seeing no train, the truck still approaching at a speed of six to eight miles an hour, and as the front of the truck reached the railroad track the cow-catcher of defendant's train struck it, knocking it to the south off the street, destroying the truck and injuring plaintiff. The judgment for plaintiff for personal injuries was for $4000, and the damage to the truck, which was submitted on the second count in the petition, was for $125.

"Plaintiff's testimony fairly presents his version of the accident and the surroundings, and being short we copy it in this opinion. It is as follows:

"I was in Poplar Bluff on January 18, 1922; and owned an automobile truck on that day, a half ton Ford truck. I had Mr. Robertson driving it for me that day, the young man who testified in this case. I was in the truck as it proceeded easterly on Vine street toward the appellant's tracks, with Mr. Robertson driving. He was sitting in the driver's seat and I was right at the side

of him. Mr. Campbell was in the back end of the car standing up.''

''As Vine street approaches the appellant's tracks it goes down an incline, you know, and there is a bank on the north side of it. There is a signal post in the street, about the center, and I judge about fifteen feet from the railroad track. On the north side of Vine street at the intersection point with the railroad there is a big bank there. The track at that point approaches Vine street from the north on a curve. I really couldn't tell you how high this bank is, but I judge it to be above the street about ten or fifteen feet at the signal post.''

''Q. Is it high enough to cut off the view of a train approaching from the north? A. Yes, a part of it is. By being on the right hand side of this signal post you can see something like eighty or maybe a hundred feet up the track north.''

''As the truck passed down Vine street on this occasion, I really do not know how fast it was moving, but I judge it would be about somewhere between five and eight miles an hour, not over that; it was going some faster than a man would walk. We passed on the right hand side of the signal post going toward the railroad track, east. On arriving near the signal post I looked at it; the bell on that signal post was not operating, nor was the red disc or flag operating; I looked north and didn't see any train.''

''Q. Then what did you do? A. We just went on down toward the track.''

''Q. What happened? A. They ran into us, the passenger train. It hit the left front wheel on the car and turned it over and threw me out. I couldn't say exactly how far it moved the car, but it knocked it some ten feet at least. I don't know whether it left it on Vine street or not; it was more on the walk. What I would call the cow-catcher struck the car first.''

''Q. Did you see the train before it struck the car? A. I seen that train, but I just turned my head, and it was right against us, within ten of fifteen feet of us,

I guess. The best I can judge, the train was moving about thirty miles an hour. Before the train struck this truck I did not hear the whistle sounded or the bell rung.''

On cross-examination, he testified:

''I have lived up near Rombauer about fifteen years, and come to town frequently, about once a week, I guess. I go out Vine street when I come here, and am familiar with that crossing down there. I knew the railroad was there, and the hill and that they ran trains over the road most any time.''

''Robertson was driving the truck for me. I think we were going somewhere between five and seven or eight miles an hour most all the way down that hill. I couldn't tell you whether the engine of the truck was running or still.''

''I knew there was a signal post down there. I watched the post all the way down until we passed it. You can't see a train until you pass the signal post, unless it was on the crossing.''

''The photograph you hand me is not a fair representation of the situation down there at Vine street and the signal post; the man that taken that was standing something like this, and it showed this track farther up than if he had been standing'' —

''Q. No, he was standing right here. I was there. This hill doesn't come down here to the railroad track, does it? A. No, but it comes there very close to it. You can see a little way across here, but then there is the corner. You got to get below the signal post before you can see ninety feet up the track.''

''Q. You have been there to look and see? A. Yes, three or four times.''

''Q. And you can see down the track 150 feet, can't you? A. No, not at the signal post. No, you can't do it. I was watching that signal post for safety, and after we passed the signal post there wasn't any use to watch that any more, was there. When I first

looked for the train, I was below the signal post, I couldn't tell you exactly how far; the car was moving along between there and the railroad track."

"Q. And you didn't see any train at all? A. Not just after I left the signal post."

"Q. You never did see it till it hit you? A. Yes, I seen it a few feet before it hit me."

"Q. How could you tell how fast it was coming if you only saw it an instant before it hit you? A. I could see it, and it was coming through there like a bat, I thought. I could tell whether it was running fast or slow. I was a little bit excited at that time. But I wasn't so excited so bad but what I could tell how fast that train was running."

"The electric bell on the signal post was not ringing. I was looking at it and it was not going."

On this statement of facts, and under the authority of four recent Supreme Court cases, that is Huff v. Railroad, 254 S. W. 874, State ex rel. v. Trimble, 254 S. W. 846, Brown v. Chicago, R. I. & P. Ry. Co., 252 S. W. 55, and Shaffer v. Chic. R. I. & P. Ry. Co., 254 S. W. 257, we hold that the trial court properly overruled the defendant's demurrer to the evidence and submitted the question of plaintiff's contributory negligence to the jury.

On this statement of facts, as detailed by the plaintiff, we must likewise hold that there is no room in this case to inject liability on the "last clear chance doctrine."

There is one additional fact that should be stated, not heretofore stated in discussing this question, and that is that it was thirty-four feet from the front of the engine which struck the plaintiff's motor truck back to the engineer's cab, and while the track runs practically north and south just before it gets to this crossing, it comes to a curve a little from the northwest. If plaintiff's testimony is true, and we must take it to be, he could not see the front of this engine when he was with-

in fifteen to twenty-five feet of the track. At a distance up the track farther than ninety to one hundred feet, and on the same statement of facts, it is inevitably true that the engineer on the train could not have seen him until he had reached a place where the cab of his engine was from ninety to one hundred feet, and which would make the cow-catcher of the engine which struck the truck something like sixty feet from the crossing.

This court, or no other court, could find that anything could have been done by the engineer to avoid this collision within the short space of sixty or seventy feet, and the short space of time that intervened after plaintiff came into view of the engineer on this engine going from twenty-five to thirty-five miles an hour. The authorities are many, and the doctrine is too well known to need numerous citations to support it, that the means must be at hand to avoid injury after the person in peril is seen or could have been seen by the exercise of ordinary care by those in charge of the instrumentality which does the damage. [See McGee v. Railroad, 214 Mo. 530, 114 S. W. 33.] While this was a populous city, and the engineer was required to be more alert than at country crossings, if the physical surroundings made it impossible for him to see this truck until he had reached a point sixty or seventy feet from the crossing, it was not his negligence after that time that caused this injury.

It was error to submit the question to the jury on this charge, and would require a reversal of the judgment as to the first count were it not shown by the record and instructions given that the jury did not find for plaintiff on the last chance doctrine. The humanitarian doctrine was not submitted on the second count of the petition hence there is no error contained in the verdict and judgment as to the damage to the motor truck.

Instruction No. 1, given for the plaintiff, told the jury that if they found the defendant was guilty of failing to observe the speed ordinance, or failed to give the

statutory signals, that they then find for the plaintiff on the first and second counts of his petition, the first count being for personal injuries and the second count being for damages to the motor truck.

And, again, plaintiff's instruction on the measure of damages told the jury that if the verdict was based on Instruction No. 1 (which instruction did not contain the last chance element), they would find for the plaintiff for damages to the motor truck. The jury having found not only for plaintiff for personal injuries but also for damages to the motor truck clearly evidences the fact that if they followed these instructions they found for the plaintiff on both counts under negligence set forth in Instruction No. 1, which made no mention of a finding on the last chance theory.

On the first hearing of this case we concluded to reverse the judgment and remand the cause on the personal injury count because of the fact that an instruction was given on the last chance doctrine, but on a rehearing counsel for respondent pointed out the wording of the instructions to which we have called attention, showing that the verdict was based on both counts of the petition for a failure to give the signals or to observe the speed ordinance, and we have concluded that the giving of the second instruction, which contained the last chance doctrine, became harmless when it is apparent that the jury did not find for plaintiff on that instruction. The judgment is therefore affirmed. *Cox, P. J.,* and *Bradley, J.,* concur.