DELA VOWELS v. MISSOURI PACIFIC RAILROAD COMPANY, Appellant.—
8 S. W. (2d) 7.

Court en Banc, May 18, 1928.

*James F. Green* and *J. C. Sheppard* for appellant.

*H. C. Blanton, M. E. Montgomery* and *M. G. Gresham* for respondent.

38

ATWOOD, J.—This is an appeal from a judgment of $17,500 awarded as damages for personal injuries sustained by respondent

when one of appellant's trains collided with an automobile in which she was riding. The train was eastbound out of Sikeston, Missouri, and the collision occurred where the public road on the north side of the railroad right of way turns south and crosses the track about a mile east of appellant's station at Sikeston. Respondent lived a short distance south of this crossing, and at her request was being driven home with her two small children by her brother-in-law, Henry Bolden, in a new Ford coupe. Two of Bolden's small children were also in the car.

Plaintiff charged negligence on account of the dangerous, defective and unlawful condition in which defendant's crossing and approaches were constructed and maintained, and also under the humanitarian or last-chance rule. Defendant's answer was a general denial coupled with a plea of contributory negligence. At the close of plaintiff's case and again at the close of the whole case, defendant interposed a demurrer to the evidence which was both times overruled.

Among the instructions given at the request of plaintiff, after defendant's demurrer to the whole case was overruled, was one on the alleged negligence in constructing and maintaining dangerous and defective crossing and approaches, to the giving of which defendant duly excepted. Subsequently while the case was being argued to the jury plaintiff askes leave to withdraw this instruction. Leave was granted and the court publicly announced to the jury that this instruction was withdrawn from their further consideration. The case thus finally went to the jury solely on the humanitarian or last-chance theory of negligence.

Appellant presents four assignments of error, the first of which is that "the court erred in giving to the jury plaintiff's Instruction No. 2, for the reason that said instruction, being based on the humanitarian rule, does not properly declare the law in that it does not require the jury to find that the agents and servants of the defendant saw, or could by the exercise of ordinary care have seen, the plaintiff in a perilous position in time, by the exercise of ordinary care, to have prevented the injury; because said instruction precludes the engine men from assuming the automobile would stop if they saw it approaching the crossing."

Instruction 2, thus complained of, is as follows:

"The court instructs the jury that if you believe and find from the evidence in this case that the railroad crossing mentioned in evidence, was on March 31, 1923, a public traveled crossing and that the defendant knew or by the exercise of ordinary care could have known of such fact, if you find it to be a fact, then you are instructed that it was the duty of the enginemen in charge of defendant's train

mentioned in evidence to exercise ordinary care to keep a vigilant lookout to discover persons and vehicles likely to be on or near said crossing, and to use ordinary care to prevent injuring such persons; and if you further believe and find that on said date the plaintiff, while unconscious of the approach of said train, if she was, and while riding in an automobile driven by Henry Bolden, approached and went on said crossing in front of said train and became and was in imminent peril of being struck and injured thereby, and that defendant's enginemen saw, or by the exercise of ordinary care could have seen, plaintiff approaching and going on said crossing and that she was unconscious of the approach of said train and was in imminent peril of being struck and injured thereby, if you so find, then you are instructed that all right to assume that plaintiff would avoid a collision ceased, and it became and was the duty of said enginemen to exercise ordinary care to use the means and appliances at hand, if any, to stop said train or slacken the speed thereof in the shortest time and space possible to avoid striking and injuring plaintiff, having due regard for the reasonable safety of said train and the persons aboard same, and if you further believe and find that said enginemen, or either of them, were careless and negligent in the performance of their duty to stop said train or slacken the speed thereof in the shortest time and space possible, as above set out, and that as a direct and proximate result of such carelessness and negligence, if any, of said enginemen, plaintiff was struck on said crossing by said train and injured, then your verdict must be for plaintiff and against the defendant, even though you may believe and find that both the plaintiff and the driver of the automobile were careless and negligent in going on the railroad track without discovering the approaching train.''

In their criticism of the foregoing instruction on the alleged ground that it ''precludes the enginemen from assuming the automobile would stop if they saw it approaching the crossing,'' counsel for defendant apparently overlooked certain testimony of defendant's fireman, Otis Hardin, the only engineman who saw the automobile before the engine struck it. He testified that when he first saw the automobile it was travelling east along the public road north of and parallel with the railroad track about as fast as his train was moving. Between fifty and seventy feet north of the point where the automobile was subsequently struck this public highway turned south and crossed the right of way and track. Regarding the appearance and progress of the automobile when it turned this corner to go south, this witness said:

''I saw this car turn to go on the railroad, and when it made the turn I raised up off my seat box and hollered just as loud as I could holler to the engineer. I was getting up off the seat, it got on my

nerves, and I knew if we didn't stop it was 'goodnight,' and I got up and came down with both hands and hollered, 'Whoa.' I did not notice very much change in the speed of the automobile after it turned to go up on the railroad, I hollered to the engineer as soon as they made the turn. . . .

"Q. What position was the car in when you concluded they were going on across in front of the train; had they turned and started up? A. They turned and started up, I didn't make no action because I didn't know they were going to make the turn until they made it, made it pretty quick, came right around—(Indicating)—like that, and just made it that quick around, I raised right up and hollered."

It thus appears that one of defendant's enginemen did see "plaintiff approaching and going on said crossing and that she was unconscious of the approach of said train and was in imminent peril of being struck thereby," and even when plaintiff was fifty to seventy feet away from the track he had ceased "to assume that plaintiff would avoid a collision." We think this part of the instruction was fully warranted by the evidence.

As to the objection that this instruction "does not require the jury to find that the agents and servants of the defendant saw, or could by the exercise of ordinary care, have seen the plaintiff in a perilous position in time, by the exercise of ordinary care, to have prevented the injury," it may be said that no fixed word formula must be always followed when instructing as to defendant's duty in such cases. In this instance, as above noted, there was substantial evidence that commencing at a point fifty to seventy feet north of the point where the collision occurred defendant's fireman saw plaintiff approaching the track with no substantial change of speed of the automobile, and thus apparently oblivious of danger. In the light of the fireman's testimony it was at once obvious that unless either the automobile or the train was caused to slacken speed or stop before the crossing was reached a collision would occur. Under such circumstances it was at least the plain duty of defendant's agents, servants and employees to "exercise ordinary care to use the means and appliances at hand, if any, to stop said train or slacken the speed thereof in the shortest time and space possible to avoid striking and injuring plaintiff, gave due regard for the reasonable safety of said train and the persons aboard same," and it was proper for the court to so instruct the jury. We find no reversible error in the giving of this instruction.

Appellant's next assignment of error is that the court erred in refusing to rebuke counsel and in sanctioning certain remarks of counsel for plaintiff in his argument to the jury. As for the remarks complained of and the court's attitude with reference thereto, we quote from the abstract of the record.

"Mr. Montgomery: The defendant here is trying to befog and be-smoke this jury—(interrupted)

"Mr. Russell: Your Honor, I object to that kind of argument here; there has been no attempt made by the railroad to be-smoke or befog the jury.

"Mr. Montgomery: That's a question for the jury, Your Honor.

"Mr. Russell: Exception.

"Mr. Montgomery (continuing)—The defense that is set up here is the same defense that has been set up by every railroad ever since the first spike was driven.

"Mr. Russell: I object to that; no evidence here that every other railroad has that defense.

"By The Court: No; sustained, and stay within the record."

From the above it appears that the court did not rule on the first exception, but ruled in favor of defendant on the second objection. It does not appear from the record that defendant ever requested the court to rebuke plaintiff's counsel, or that the court "sanctioned" the remarks. Such was not the case in Neff v. City of Cameron, 213 Mo. 350, l. c. 370, cited by appellant. There counsel not only undertook to argue matters clearly not in the record, but the trial court attempted to justify the remarks objected to. In the light of the record here presented it does not appear that appellant's claim of prejudicial error should be sustained, especially in view of the fact that this point is not mentioned in the motion for a new trial.

It is next urged that "the court erred in refusing to grant defendant a new trial because the verdict was excessive." It should be first noted at the trial defendant made no effort to disprove or minimize plaintiff's injuries. Defendant's claim agent testified that "she had been badly hurt," and in the course of the examination of plaintiff's witness, Dr. Malcomb, defendant's counsel interrupted and made the following statement:

"I don't think there is any dispute about this; Dr. Malcomb's testimony will be merely accumulative; I don't see the purpose of it, unless just to make it accumulative—no contention about the injuries."

In passing on the reasonableness of a verdict each case must be decided on its own merits, due consideration being given to ocular advantages peculiarly enjoyed by the jury and trial court. The record discloses that plaintiff was twenty-two years of age at the time she was injured. Prior thereto she had been physically normal, strong and healthy, able to do her house work with ease, had borne two children and experienced no unusual hazard or difficulty in child-birth. In the collision with defendant's engine she sustained a fracture of the hip bone in which the femur or long bone of the leg was pushed through the socket cavity into the pelvis and over

against the fifth lumbar vertebra, breaking off the lateral process of this vertebra, materially shortening and stiffening the limb and causing a deflection of the back bone, which curvature will likely tend to increase as she goes through life. The bony structure of the pelvis was so dislocated, fractured and crushed, and at the time of the trial was so jammed together and ossified that, according to the medical testimony, she would never be able to survive the delivery of another child except through a Caesarean operation, or by crushing the head of the child so it would pass through the deformed pelvis. The medical evidence was that the whole pelvis is not and never could be restored to its normal form and position, that it was too badly crushed to make this possible. Plaintiff lay in the hospital for some eight weeks and suffered intensely. She was taken to her home on a stretcher and for three weeks more was helpless, in great pain and unable to lie on her side. Her previous normal weight was about 125 pounds, and four months after her injuries were received she still showed a loss in weight of about thirty-eight pounds. At the time of the trial she was lame, weak, highly nervous, suffering pain, unable to perform much household work, her injuries in the main being pronounced permanent, and defendant made no serious effort to discount or minimize them. We have carefully examined cases cited by both appellant and respondent involving verdicts allowed for similar injuries and it does not appear that this verdict is excessive.

Appellant's last assignment of error is that "the court erred in refusing defendant's demurrers to the evidence at the close of the plaintiff's case, and at the close of the whole case." In this connection appellant argues at length and cities authorities to show that plaintiff was guilty of such contributory negligence as would bar recovery, apparently ignoring the fact that the case was finally submitted to the jury solely on the humanitarian theory which presupposes that plaintiff was negligent. As heretofore stated the record shows that defendant's fireman saw her approaching a place of danger apparently oblivious to her peril, and while she was yet fifty to seventy feet away from the point of collision he was convinced that the automobile in which she was riding would be struck if his train did not stop. Under these circumstances the question of whether or not a case was made for the jury becomes simply a question of whether or not there was any substantial evidence that defendant's fireman discovered plaintiff in a place of danger oblivious to her peril in time for defendant's enginemen by the exercise of ordinary care to so use the means and appliances at hand to stop said train or sufficiently slacken the speed thereof as to avoid striking and injuring plaintiff, having due regard for the reasonable safety of said train and the persons aboard same. While it is not disputed that defendant's fireman saw the car in which plaintiff was

riding when it turned the corner some fifty to seventy feet from the point of collision and started toward the railroad crossing, the testimony is conflicting as to the rate of speed this automobile was then going, the rate of speed at which the train was then travelling, and how far the train then was west of the crossing. Regarding the testimony in the light most favorable to plaintiff, as we must do in ruling defendant's demurrer, we find that the driver of the car, Henry Bolden, testified that he was an experienced driver familiar with the speed of cars, and that at the corner when he turned toward the railroad crossing he put the car in low gear and slowed down to three or four miles an hour; that he continued at this rate of speed until he reached the crossing, when he had to go even slower because the crossing was so rough, and when the rear wheels of the automobile came to the south rail of the track the engine stalled and his car remained at a stand still for four or five seconds. Taking the distance from the corner to the crossing to be fifty feet, the minimum distance testified to, and the rate of speed to be four miles an hour, it would have taken plaintiff more than eight seconds to travel from the corner to the crossing. Adding to this four seconds, the minimum time Bolden said his engine was stalled before the train struck it, it would appear that at least twelve seconds elapsed between the time the fireman first saw plaintiff approaching a place of danger oblivious to her peril and was convinced that she would not stop, and the time she was struck by the train. Witness Burns, who was driving a team of horses a short distance behind plaintiff, testified that the train was between 375 and 400 feet west of the crossing when the car in which plaintiff was riding had proceeded about half way from the corner to the crossing. Witness Matthews, who was riding in a car some distance behind plaintiff, testified that the train was about 400 feet west of the crossing at the time the automobile turned the corner. These witnesses further testified that the train was going at the rate of twenty to twenty-five miles an hour, and in the course of the trial defendant's counsel said: "I will admit we were running twenty-five miles an hour." Witness Lewis, having qualified as an experienced engineer, testified that a train such as the one in question going twenty-five miles an hour could be stopped by use of the customary appliances with reasonable safety to the passengers within a distance of 270 feet. The necessary operations he said would be shutting off the steam, applying the emergency, and opening the sand lever, and would not take two seconds. Defendant's engineer testified that the steam had already been shut off to comply with the slow order before the fireman called to him regarding plaintiff's danger. Such being the case he had only to apply the emergency brake and pull the sand lever, and a reasonable deduction is that this train could and should have been stopped within considerably less

than 270 feet. Defendant introduced testimony to the effect that the train was only 120 to 130 feet west of the crossing when the fireman saw plaintiff turn the corner, and other evidence as to time, distance and rate of speed was conflicting, but it was for the jury to find the facts from the evidence properly before it.

As we have already indicated, the testimony of defendant's fireman precluded the right to any assumption on his part that plaintiff would stop before she was struck by the train. Hence, such cases as Degonia v. Railroad, 224 Mo. l. c. 596; State ex rel. St. L. S. F. Ry. Co. v. Reynolds, 233 S. W. 219, and others cited on this point, are not applicable. Neither is this a case where the fireman, busy in the performance of other duties, failed to see plaintiff in time, as in McGee v. Railroad, 214 Mo. 530, l. c. 542; nor are we called upon to deal in "refinements" in order to fix liability, as in Rollins v. Railroad, 252 Mo. l. c. 541. In State ex rel. Wabash Ry. Co. v. Bland, 221 S. W. 690, we ruled that a decision of the Kansas City Court of Appeals approving the trial court's holding in an action for damages resulting from a collision between an automobile and a railroad train, that negligence of the fireman in telling the engineer to stop the train instead of telling him to sound the whistle, with approximately four seconds remaining before the collision occurred, presented a case for the jury, notwithstanding lack of testimony as to time required for engineer to sound whistle, was in conflict with decisions of the Supreme Court, as offending against the rule that verdicts must be based on substantial evidence and not on conjecture and speculation. That decision is predicated upon proof that when defendant's fireman first discovered plaintiff's wife in a place of danger she was approximately fifty feet from the track and moving toward it at the rate of ten miles an hour; that the train was one hundred feet away, approaching at the rate of twenty miles an hour; that the train could have been stopped within 275 to 300 feet; and that no warning signals were given by the trainmen. In the instant case defendant's evidence might have been substantially within the limits of this case as to rate of speed of the automobile and of the train, and the distance within which the train could have been stopped, but plaintiff introduced substantial evidence in sharp contrast thereto on which the jury might have found as it did. Furthermore, no assignment of negligence because of defendant's failure to sound a warning was submitted to the jury, and hence the specific facts upon which we ruled that the Court of Appeals had approved a conjectural verdict are not in this case. We think plaintiff clearly made a case for the jury and it was properly submitted under the humanitarian rule.

The judgment is affirmed. All concur, except *Gantt, J.*, not sitting.

The foregoing opinion is adopted by Court en Banc. All concur, except *Graves, J., dubitante.*